## 36993. SMITH v. THE STATE.

GREGORY, Justice.

Timothy Renard Smith was convicted of murder in Floyd County Superior Court and sentenced to life imprisonment. The evidence at trial showed that around midnight on June 2, 1979 the defendant and Sheldon Stubbs became involved in an argument outside The Chicken Shack, a pool hall and tavern, in Rome. Subsequently the defendant shot Stubbs in the head. Testimony was conflicting as to whether the defendant was the aggressor or whether he had acted in self-defense. There was some testimony which showed that, prior to the shooting, the defendant had retreated and that he shot Stubbs as Stubbs lunged toward him. There was also testimony which indicated that, during a pause in the argument, the defendant walked to his car, returned with a pistol and challenged Stubbs to fight. No weapon was found on Stubbs.

The defendant relied on the defenses of accident and self-defense. The trial court charged the jury at length on both.

(1) The defendant first argues that the trial court erred in refusing to admit the transcript of testimony given by Bobby Taylor, an itinerant construction worker, at the preliminary hearing. Taylor,

a witness to the shooting, did not appear at trial and the defendant argued that he was "inaccessible" within the meaning of Code Ann. § 38-314. At trial defense counsel stated that Taylor's testimony at the preliminary hearing would show that Stubbs had been the aggressor in the fight and that, further, Stubbs had reached into his pocket prior to being shot by the defendant. Defense counsel urged that, since Taylor's testimony was the only testimony which would corroborate defendant's statement that Stubbs had reached into his pocket immediately prior to the shooting, it was essential that Taylor's testimony be admitted.

Outside the hearing of the jury the trial court questioned defense counsel at length about his efforts to locate Taylor. Defense counsel stated that, at the time of the preliminary hearing, Taylor had been incarcerated in the Floyd County jail for driving under the influence; that Taylor had not been subpoenaed by the defense to testify at the preliminary hearing, but had been brought over from the jail by the sheriff; that the defense knew at the time of the preliminary hearing that they would want Taylor to testify at trial, but never subpoenaed him; that, as the date for trial approached, defense counsel attempted to trace Taylor through two addresses given to him by the Floyd County Sheriff's Department, but was unable to locate Taylor. The trial court inquired of defense counsel, in turn, whether he had checked post office records, records of local builders associations, records of the court in which Taylor was tried for driving under the influence or the records of the Department of Public Safety in his attempts to locate Taylor. Defense counsel admitted that he had checked none of these. Upon further questioning by the court, defense counsel conceded that, at the time of the preliminary hearing, he knew that Taylor was a laborer who tended to drift from job to job, and, further, that Taylor had informed the defendant that "he didn't know how long he would be in Floyd County." The trial court ruled that the defendant had not made a sufficient showing of diligence in searching for Taylor and refused to admit the transcript of his former testimony.

On appeal defendant argues that he "made a very diligent effort to locate Bobby Taylor, including searching for him at two addresses and not being able to locate any forwarding address."

Code Ann. § 38-314 provides: "[t]he testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by anyone who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies."

We have said that whether a witness is "inaccessible" within the

meaning of this section "depends upon the diligence shown by the party seeking to use his testimony on a former trial in ascertaining where the witness is and in attempting to bring him into court." *Robinson v. State,* 128 Ga. 254, 256 (57 SE 315) (1907). Determining whether a witness is inaccessible is a matter within the discretion of the trial court (*Todd v. State,* 243 Ga. 539 (2) (255 SE2d 5) (1979); *LaCount v. State,* 237 Ga. 181 (1) (227 SE2d 31) (1976); *Whatley v. State,* 230 Ga. 523 (198 SE2d 176) (1973)), and "will not be reversed unless a manifest abuse of discretion appears." *Robinson,* supra, at 257.

We cannot say that under the facts of this case the trial court abused its discretion in refusing to admit Taylor's former testimony. The evidence supports the trial court's conclusion that the defendant did not show that Taylor could not " 'with due diligence be found within the state.' " *Todd,* supra, at 542; *LaCount,* supra, at 182.

(2) Next defendant argues that the trial court erred in refusing to permit John Williams to testify to the details of an argument he had with the victim on the night of the shooting, as this testimony would have shown "certain traits" of the victim.

Generally the character of the victim in a murder trial is inadmissible. *Henderson v. State,* 234 Ga. 827 (1) (218 SE2d 612) (1975); Code Ann. § 38-202. If, however, a prima facie showing is made that the victim was the assailant and had assailed the accused and that the accused was honestly attempting to defend himself, then "proof of the violent and turbulent character of the deceased becomes admissible." *Henderson,* supra, at 828; *Black v. State,* 230 Ga. 614 (3) (198 SE2d 314) (1973). But it is "well established by decisions of this court that general character for violence of the deceased can not be established by specific acts." *Henderson,* supra, at 828; *Black,* supra at 615; *Warrick v. State,* 125 Ga. 133 (6) (53 SE 1027) (1906).

In this case, John Williams testified that he had no knowledge of the reputation of Sheldon Stubbs for violence. The defendant acknowledges that Williams could not testify to specific acts of violence committed by Stubbs, but urges that Williams' testimony concerning his argument with Stubbs should have been admitted as "background information" to show the "aggressive and belligerent mood of the deceased immediately prior to his death." However, the defendant has failed to put into the record what John Williams would have testified to concerning his argument with the deceased. Nor has he made a showing that Williams did argue with Stubbs "immediately prior" to the shooting. We are unable to determine whether Williams was attempting to testify to specific acts of violence of the deceased or whether his testimony would have been

admissible for some other purpose. Therefore, we cannot say that the trial court erred in excluding this testimony.

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs in the judgment only.*

DECIDED APRIL 9, 1981.

*Christopher A. Frazier, Barkley & Barner, Jim Garner,* for appellant.

*F. Larry Salmon, District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.