## 38982. JONES v. THE STATE.

SMITH, Justice.

Following a trial before a DeKalb County jury, appellant Arthur Lee Jones, a/k/a Alan Jason, was convicted of murder for the July 10, 1981 shooting death of seventeen year old William "Shorty" Colquitt and was sentenced to life imprisonment. On appeal Jones raises six enumerations of error. Finding no error, we affirm.

Appellant and his common law wife, Paula Kimbell, resided in a DeKalb County apartment complex at the time of the shooting. On the night of July 10, 1981, William Colquitt was visiting friends at the apartment complex when Paula Kimbell asked him to drive her to a nearby gas station to purchase cigarettes. Some ten minutes later, they returned to find appellant waiting for them on the front porch of his apartment with a gun in his hand. Several of appellant's neighbors testified at trial that appellant and Colquitt argued briefly; that a gunshot was fired; that Colquitt staggered out of the driver's seat of his car and fell to the ground; that appellant pulled his wife from the passenger's side and struck her in the face; and that appellant then fled on foot. The only eyewitness to the shooting was a nine year old girl who lived in a neighboring apartment. She testified that from her porch she saw appellant pull Paula out of the car, hit her with his gun, walk around to the driver's side, and shoot the victim in the head at point-blank range.

An autopsy determined the cause of Colquitt's death to be a single gunshot wound to the head. A .22 caliber bullet penetrated the victim's ear canal, traveled through his brain, and lodged in the rear part of his skull. A doctor who briefly examined Colquitt in the hospital emergency room soon after the shooting testified that the victim's eardrum was perforated and that a portion of his ear canal

was dark black in color. These observations were consistent with the state's theory that appellant shot Colquitt in the ear at close range.

Appellant chose not to introduce evidence at trial. Instead of attempting to controvert the state's version of the events of July 10, 1981, appellant relied on the affirmative defenses of self-defense and accident. The only evidence introduced to support these defenses was offered by the state, and consisted of a statement appellant made after he voluntarily turned himself in to police on August 5, 1981. Appellant signed a waiver of counsel form, then gave police officers a statement detailing his defense at about 1:00 a.m. on August 6. In his statement, appellant said that on the day Colquitt was killed, an unidentified man named "Red" approached appellant and gave him a pistol for safekeeping. Later, when appellant's wife and Colquitt drove up to the apartment complex parking lot, Colquitt jumped out of his car and threatened appellant with a knife. Acting in self-defense, appellant threw the gun at Colquitt. The gun missed Colquitt but hit the roof of his car, where the impact caused it to discharge, firing a bullet which hit Colquitt in the ear and killed him. Appellant's statement to this effect was reduced to writing and was read into evidence by the prosecutor following a Jackson-Denno hearing and a determination of voluntariness by the trial judge.

1. The evidence presented at trial authorized a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crime as charged. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing Code Ann. § 38-314, appellant assigns as error the trial court's denial of his motion to introduce into evidence the transcript of a pre-trial committal hearing containing testimony of Paula Kimbell. This enumeration is without merit.

Code Ann. § 38-314 sets forth the "former testimony" exception to the hearsay rule. "In order for former testimony to be admissible where it is sought to be used for hearsay purposes there must have been in the former trial substantially the same parties and substantially the same issues and the witness must not be available at the present trial." Green, The Georgia Law of Evidence, § 230 (1957). See Code Ann. § 38-314, supra. The sole question for determination here is whether appellant's wife was unavailable within the meaning of § 38-314 at the time of appellant's trial.

The only evidence introduced by appellant to show unavailability was defense counsel's statement at trial that "[m]y office, myself and my investigator have made many attempts to contact her and subpoena her to trial, including going into her place

of employment last night . . ." The trial court held this showing of unavailability to be insufficient and declined to admit the former testimony by appellant's wife.

Our cases are clear that the inaccessibility of a witness under § 38-314 depends upon a showing by the party seeking to use the witness' former testimony that he has used due diligence in trying to locate and bring to court the absent witness. *Robinson v. State,* 128 Ga. 254 (57 SE 315) (1907). Whether appellant exercised such diligence in this case was a factual question addressed to the trial judge's discretion. We find that there is evidence to support the trial court's ruling and that he did not abuse his discretion. The denial of appellant's motion is affirmed. See *Smith v. State,* 247 Ga. 453 (276 SE2d 633) (1981).

3. Appellant further contends that a mistrial should have been granted because of statements made at trial by prosecution witnesses which he claims placed his character in issue. During the state's case, a neighbor of appellant testified that he heard appellant and the victim arguing and then heard a single gunshot. The witness continued, "And so, I looked out, but, I guess, he didn't shoot him." Prosecutor: "Why do you say that?" Witness: "Because, normally, . . . he'll shoot but it wouldn't be dead at you or nothing like that." Counsel for appellant immediately objected and moved for a mistrial based on the witness' remarks concerning appellant's prior activities as a marksman. A discussion was held outside of the jury's presence in which defense counsel accused the prosecutor of deliberately eliciting testimony about a prior occasion in which appellant had shot at and missed someone in a poker game. The prosecutor admitted knowing that appellant had fired illegal gunshots in the past, but asserted that the question was intended to elicit testimony about the victim's condition immediately after the shooting. In particular, the prosecutor wanted to corroborate testimony of others who were present at the crime scene to the effect that because of the unusual placement of the wound, Colquitt's injury was not immediately apparent to the bystanders. Following this exchange, the judge overruled the motion for a mistrial, and offered to instruct the jury to disregard the potentially harmful testimony. Counsel for appellant requested that no such curative instruction be given. Since defense counsel declined the trial court's offer to give curative instructions to the jury, appellant will not now be heard to complain.

The decision of whether to grant a mistrial because of improper conduct by counsel rests with the trial judge. Code Ann. § 81-1009. His decision will not be overturned on appeal absent a manifest abuse of discretion. *Barrow v. State,* 235 Ga. 635 (221 SE2d 416) (1975). No such abuse of discretion appears in the record. Accordingly, we affirm

the trial court's denial of appellant's first motion for a mistrial.

Appellant contends that a later comment by a witness for the state necessitated a mistrial as well. Louis Arcangeli, a homicide detective with the Atlanta Police Department, testified that during the course of his investigation into the shooting of William Colquitt, and acting on an anonymous tip, he "went to [the police department] identification section . . . and checked the name of Arthur Jones." Appellant urges that this testimony implied that he had a criminal record, thereby placing his character in issue. We disagree.

In *Ogles v. State,* 238 Ga. 716 (235 SE2d 384) (1977), we held that testimony by a police officer that he "checked the defendant's record" fell just short of improperly placing 'the defendant's character in issue. The statement by Detective Arcangeli in this case is much less prejudicial than the statement upheld by this court in *Ogles.* Unlike the police officer's statement in *Ogles,* Arcangeli's statement that he checked appellant's name in the identification files does not directly imply that the person whose name was checked had a criminal record. "Here, the statement was made but once and the police officer, although experienced, was merely responding in narrative form to questions asking him to explain what he did to attempt to locate and identify the person who had committed the offenses." *Lee v. State,* 154 Ga. App. 562, 565 (269 SE2d 65) (1980). See also *Stanley v. State,* 250 Ga. 3 (295 SE2d 315) (1982). We find no error. Appellant's second motion for a mistrial was properly denied.

4. Appellant enumerates as error the admission into evidence of a statement he made to police on August 5, 1981, the night he turned himself in. Prior to introduction of the statement at trial, the judge held a Jackson-Denno hearing outside of the presence of the jury to determine the validity of appellant's Miranda waiver and the voluntariness of his statement. After reviewing the record, we conclude that the trial court's ruling was fully authorized by the evidence. See *Pittman v. State,* 245 Ga. 453 (265 SE2d 592) (1980); *Crawford v. State,* 245 Ga. 89, 90 (263 SE2d 131) (1980).

5. In his final two enumerations, appellant contends that the trial court erred in its jury charge in two respects. First, appellant argues that it was error to charge as follows: "In a criminal case, the standard by which acts are to be judged are those of a reasonable person, and when the evidence shows conduct which deviates from such normal behavior and a penal statute is violated thereby, it is adjudged to be criminal, unless excused by insanity or delusional compulsion, or by a mental disease, injury, or congenital deficiency." Appellant argues that the above reference to the insanity defense was prejudicial and confusing to the jury in that insanity was never an issue at trial. We think that the trial court's passing reference to the

insanity defense was not error, particularly when that portion of the charge is viewed in the context of the entire charge defining criminal conduct. We note that the jury was charged fully concerning appellant's defenses of mistake and accident. Viewed in its entirety, the charge was sound. *Lumpkin v. State,* 249 Ga. 834 (295 SE2d 86) (1982); *Flannigan v. State,* 139 Ga. App. 590, 591 (229 SE2d 98) (1976).

The second alleged error in the charge is that the trial court failed to advise the jury that no inference of guilt should be drawn from appellant's failure to testify at trial. Appellant did not request a charge to this effect. The record shows that the trial court charged the jury concerning the presumption of innocence in a criminal trial and the state's burden of proving appellant's guilt beyond a reasonable doubt. We hold that where appellant made no request to charge and where the charge as a whole was fair and just, it was not error to fail to charge the jury that guilt may not be inferred from the defendant's failure to testify. Cf. *Porter v. State,* 141 Ga. App. 602, 603 (234 SE2d 100) (1977); *Floyd v. State,* 149 Ga. App. 164 (253 SE2d 780) (1979).

*Judgment affirmed. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 2, 1982.

*Alden W. Snead,* for appellant.
*Robert E. Wilson, District Attorney, Susan Brooks, Assistant District Attorney, Michael J. Bowers, Attorney General, Victoria H. Soto, Staff Assistant Attorney General,* for appellee.