A92A2333. LEVENTHAL v. SEITER et al.
(430 SE2d 378)

BLACKBURN, Judge.

The appellees, William and Kathleen Seiter, in July 1989, brought a breach of contract action against the appellant, Ronald Leventhal, seeking monetary damages and specific performance pursuant to the terms of three separate contracts for the sale of three different properties and improvements thereon. The appellant responded, asserting several defenses and counterclaims, including counterclaims for fraud and breach of contract. The case was tried by the trial court sitting without a jury, and on October 8, 1991, judgment was entered against the appellant in the amount of $65,610 principal and interest, $33,604 attorney fees, cost of the action and post-judgment interest. The appellant moved for new trial and to set

aside the judgment, both of which were subsequently denied by the trial court, and this appeal followed.

In the summer of 1988, the appellees, one of several builders of custom homes on lots in a subdivision that had been developed by the appellant, were contacted by the sales agent for the subdivision concerning the possibility of purchasing four remaining lots in the subdivision that the appellant had been unable to sell. The appellant needed to sell these lots to obtain working capital and to increase his cash flow. However, the appellees initially were not interested in purchasing these lots because the terrain of the lots was undesirable and they would be difficult to build upon. In addition, the appellees did not want to tie up their working capital in constructing speculative homes on these lots because the homes would be difficult to sell.

As a result of the appellees' concern over the risks of purchasing these lots, the appellant suggested that the appellees design homes for these lots, supervise the construction of the homes, and the appellant would pay them $4,000 for their efforts. The appellant further indicated that he would obtain construction loans on the properties and bear the responsibility for all costs and expenses. This arrangement was suitable to the appellees, but the appellant was unable to obtain a construction loan from the bank. Thereafter, the appellees indicated that, in order for them to obtain a construction loan on the three lots, the appellant would have to agree to purchase the property for a certain amount to decrease the risk of the venture. A representative of Smyrna Bank & Trust ("the bank"), was consulted about this arrangement, and was willing to allow the appellees to borrow the money because of the appellees' good track record. The bank, however, conditioned the loan on the appellant's execution of contracts in favor of the appellees for the purchase of the properties in the event that the appellees were unable to sell the homes within a certain period of time.

Pursuant to this agreement between the parties, the appellees designed plans for the construction of homes on each of the three properties. On behalf of the appellant, the sales agent for the subdivision approved the home designs and approved the proposed cash prices for the homes of $117,000 for lot #1, $115,500 for lot #14, and 114,500 for lot #29 in cash on behalf of the appellant. The prices of the homes included the cost of the lots. Afterwards, the appellees applied for a construction loan to buy the three lots and build homes upon them. Based upon the agreement that the appellant would purchase each of the properties in the event that they were not sold to third parties, the bank agreed to loan the appellees in excess of $287,000 for the construction of homes on each of the three properties. An attorney for the bank prepared the three contracts evidencing the agreement between the parties that the appellant would purchase

lot #1 for $117,000, lot #14 for $115,500, and lot #29 for 114,500 in cash, before May 15, 1989, if any of the homes had not been purchased by third parties by that date.

The contract contained a clause which provided that if any of the properties were sold by either party at a price that would net the seller an amount equal to or greater than the sales price under the agreement, the contract between the appellant and the appellees would become a nullity, ending all obligations to the appellees and the appellant under original contract for any lot which was so sold. This clause was later amended in writing by the parties on October 21, 1988, and provided that if any third party sale netted to the seller an amount in excess of the agreed upon sales price, the appellees and the appellant would split the profits equally. The original contract also contained a merger clause, which provided that the agreement "constitute[d] the entire agreement between the parties and no modifications, representations, inducements, promises or agreements . . . not embodied herein shall be of any force or effect."

On October 14, 1988, at the closing of the construction loan, the bank executed quitclaim deeds on each of the properties in favor of the appellant, releasing and conveying to the appellant, all of the bank's rights, title and interest in each of the lots. The appellees purchased the three lots in question from the appellant, and paid the appellant $64,500, $21,500 for each lot, out of the loan receipts that the appellees simultaneously received from the bank for the purpose of constructing new homes on the three lots. Thereafter, the appellant executed a warranty deed on each of the three lots in favor of the appellees. The appellees subsequently built homes on each of the three lots. Although the homes were marketed by the sales agent of the subdivision and a private realtor, the appellees were unable to sell any of the three properties before May 1989.

On May 15, 1989, pursuant to the terms of the contracts between the parties, the appellees demanded that the appellant purchase the homes at the contract prices and the appellant refused. In a letter of that same date, the appellant, through counsel, indicated that the contracts did not reflect all of the terms and agreements of the parties because the agreed upon purchase price was $4,000 above the cost incurred by the appellees in building the homes. The appellant further demanded that the appellees convey title to the properties for the sum of $4,000 plus costs. On May 16, 1989, the appellees responded, stating that the contract terms were entirely reflected in the agreement. As a result of the appellant's failure to comply with the terms of the contract, this action ensued. The properties in question and the homes thereon were subsequently purchased by third parties for less than the price contained in each of the contracts after the commencement of this action.

1. In his first enumeration of error, the appellant contends that the trial court erred in refusing to grant further discovery pursuant to his motion to compel. We disagree.

This action was filed on July 5, 1989, and pursuant to a consent order that had been entered into between the parties on February 19, 1990, the time period for discovery had been extended through June 1, 1990. The appellant requested that the court compel responses to his interrogatories and request for production of documents on September 10, 1991, over a year after the discovery deadline had expired.

" 'Under the discovery provisions of the Civil Practice Act, the trial judge is granted broad discretion. Historically, it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of such discretion in absence of abuse. (Cits.)' [Cit.]" *Freeman v. Ripley*, 177 Ga. App. 522, 523 (339 SE2d 795) (1986). Considering that the time period for completion of discovery, by consent of both parties, had expired approximately 15 months before the appellant's motion to compel discovery, and the motion was filed approximately 20 days before the scheduled date for trial, we find no abuse of discretion in the trial court's denial of the appellant's motion to compel discovery. Consequently, this enumeration is without merit.

2. The appellant contends that the appellees did not produce information concerning the appellees' failure to meet certain standards in compliance with the appellant's Notice to Produce, and the concealment of this recently discovered information warrants a new trial. The appellant further asserts, in the alternative, that he is entitled to a new trial based upon the affidavit of Sandra Smith, the appellant's secretary, which impeaches the testimony of one of the appellees' witnesses. In her affidavit, Ms. Smith avers that Mike Connolly, a former employee of the appellant, wanted her to ask the appellant to pay him $5,000 to prevent him from testifying against the appellant ever again. The appellant also offers as a basis for a new trial, the affidavit of Randy Chambers, another builder, who avers that the appellees, through counsel, tried to encourage him to testify against the appellant contrary to his conviction.

" 'It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' [Cits.] All six requirements must be complied with to secure a new trial. [Cit.]" *Tim-*

*berlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). "[A] trial court's denial of the motion [for new trial] will not be reversed absent an abuse of discretion. [Cits.]" *Dick v. State*, 248 Ga. 898, 901 (2) (287 SE2d 11) (1982).

In the case sub judice, the appellant has not shown that it was not from want of due diligence that he did not acquire this information earlier. In addition, he has not shown that the information that he proposes to submit is so material that it would have resulted in a different judgment. Further the affidavit of Mike Connolly serves as merely impeachment evidence and it does not warrant a new trial. Therefore, we conclude that the trial court did not abuse its discretion in failing to grant the appellant's motion for new trial based upon the appellant's failure to meet all of the requirements enunciated in *Timberlake*.

3. In enumerations 3 and 4, the appellant contends that the trial court erred in admitting documents in violation of OCGA §§ 24-7-1; 24-7-2; 24-5-2; 24-5-3; and 24-5-4. However, these enumerations are not supported by argument or citation of authority. Accordingly, these enumerations are deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). *Plante v. State*, 203 Ga. App. 33, 35 (3) (416 SE2d 316) (1992).

4. The appellant contends that the trial court erred in finding that the contract and the amendment were complete, thereby excluding parol evidence, although the testimony at trial showed that collateral oral agreements existed.

" 'An oral agreement between the parties, made contemporaneously with the execution of the note or prior thereto relating to a condition not expressed in the note is incompetent to change the contract as represented on the face of the note.' [Cit.] Evidence as to an alleged understanding which is antagonistic to and inconsistent with the terms of the instrument is inadmissible to vary such terms and legally insufficient to sustain a defense of fraud. [Cits.]" *Curtis v. First Nat. Bank of Commerce*, 158 Ga. App. 379, 381 (1) (280 SE2d 404) (1981). As parol evidence is inadmissible to challenge the unambiguous terms of the contract, we conclude that the appellant's enumeration is without merit.

5. The appellant also asserts that the trial court erred in finding that the underlying contracts were enforceable because the evidence shows that the appellees wilfully misled the appellant as to the terms of the contract, including the contract price of the property in question. In the alternative, the appellant contends that if the appellee did not wilfully mislead the appellant, then a mutual mistake of fact occurred. We disagree.

Fraud which constitutes a ground for voiding a contract under OCGA § 13-5-5 must be fraud which induced the parties to enter the

contract. *Castellana v. Conyers Toyota*, 200 Ga. App. 161, 165 (2) (407 SE2d 64) (1991). " 'In order to show fraud and misrepresentation in the procurement of the contract as a defense to an action on the contract, it is not sufficient to show that false representations were made, which were known to be false and which were made with the intention to deceive. It must also be shown that the defendant exer⹏ cised due care to discover the fraud. . . . (Cits.)' [Cit.]" *Charter Medical Mgmt. Co. v. Ware Manor*, 159 Ga. App. 378, 380 (2) (283 SE2d 330) (1981). " 'It is peculiarly the province of the [factfinder] to pass on these circumstances. (Cits.)' " *Allen v. Sanders*, 176 Ga. App. 647, 648 (1) (337 SE2d 428) (1985).

In this case, the appellant has not shown that he has been duly diligent in ascertaining the fraud that is alleged to exist. In fact, the appellant admitted at trial that he was present at the closing in October 1988, scanned the contract and signed the contract on that date, which contained a merger clause, providing that the agreement constituted the "entire agreement between the parties and no modifications, representation, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein shall be of any force or effect whatsoever." The appellant also admitted that he did not carefully read the contract until the spring of 1989, months after the execution of the contract, and, at that point, he allegedly discovered that the contract did not reflect the true understanding of the parties.

Further, "a defendant seeking in a court of law to avoid his contract for [the defense of mutual mistake] must allege the grounds of the mistake as fully as he would be required to do in a court of equity. [Cits.] This means that the pleading must show the particular mistake and illustrate how it occurred, why the terms of the contract which the pleaders insist should have been inserted were left out, or how terms not agreed upon came to be inserted. [Cits.]" *Mangham v. Hotel & Restaurant Supply Co.*, 107 Ga. App. 619 (131 SE2d 74) (1963). The appellant has failed to specifically allege in his counterclaim how any mutual mistake occurred and why the terms that should have been inserted were allegedly left out of the agreement. Accordingly, this enumeration is also without merit.

6. The appellant contends that the trial court erred in failing to reduce the judgment in mitigation of the appellees' damages in accordance with OCGA § 13-6-5.

While it is true that in a breach of contract action, the injured party is "bound to lessen the damages as far as is practicable by the use of ordinary care and diligence," OCGA § 13-6-5, the contention that one has failed to comply with the duty to mitigate damages "must be supported by evidence from which [the factfinder] could reasonably estimate the amount by which damages could have been

mitigated. [Cits.] *Considine Co. of Ga. v. Turner Communications Corp.*, 155 Ga. App. 911, 913 (3) (273 SE2d 652) (1980). In the instant case, the appellant did not present any evidence by which the trial court could have reasonably estimated the amount by which damages could have been mitigated. Consequently, this enumeration is without merit.

7. The appellant contends that the trial court erred in awarding attorney fees to the appellees pursuant to OCGA § 13-6-11, because the record does not support any finding that the appellant was stubbornly litigious or caused unnecessary expense or delay. We disagree.

"The issue of attorney fees under OCGA § 13-6-11 is a question for the [factfinder] and an award will be upheld if any evidence is presented to support the award. [Cit.]" *Arford v. Blalock*, 199 Ga. App. 434, 439 (9) (405 SE2d 698) (1991). In the case sub judice, the trial court found that the appellant caused the appellees unnecessary trouble and expense in litigation, warranting the payment of attorney fees, based upon his failure to comply with the terms of the unambiguous contract. The contract clearly required the appellant to purchase the lots in question from the appellees on a date certain and the appellant has not presented sufficient evidence to justify his absolute failure to do so. We conclude that there is evidence to support the trial court's finding, and the award of attorney fees must be upheld.

8. The appellant contends that the trial court erred in finding that the appellees acted in good faith in fulfillment of the terms of the contract. He further asserts that their failure to perform according to the terms of the contract bars this action.

" 'When a trial court sits as both judge and jury, the court's findings of fact are binding on appeal, and, unless wholly unsupported or clearly erroneous, will not afford a basis for reversal. (Cits.) On appeal, this court must not substitute its judgment for that exercised by the trial court when there is some support for the trial court's conclusion. Our duty is not to weigh evidence de novo, but to merely determine if there is any evidence which supports the judgment below. (Cit.) Even in the face of conflicting evidence, the trial court's judgment will be upheld as long as there is "any evidence" to uphold the lower court's determination. (Cit.)' [Cit.]" *Edwards v. Wilson*, 185 Ga. App. 514, 515 (1) (364 SE2d 642) (1988).

In this case, there is evidence in the record to show that the appellees, in good faith, complied with the terms of the contractual agreement. They constructed the homes on the properties, and were ready, willing and able to convey title of the properties to the appellant on May 15, 1989. Contrary to the belief of the appellant, the contract did not require the appellees to aggressively market the property, although the appellees put forth effort to have the property marketed by the agent on the property as well as by a private realtor.

The amendment to the contract merely permitted the sale of the property to a third person by either party. Therefore, this enumeration is also without merit.

9. The appellant asserts that the trial court erred in requiring a supersedeas bond pending the motion for new trial, because the evidence produced did not show that good cause existed as required under OCGA § 9-11-62 (b). On the contrary, one of the appellant's former employees testified that, at the time that the appellant was required to purchase the properties based upon the terms of the contract, the appellant was having financial difficulties. In fact, the appellant's former attorney withdrew from the representation of the appellant because of his financial difficulties. In addition, the appellant's former employee further testified that the appellant had no intention of abiding by the terms of the contract. Another builder testified that he declined a similar offer made to him by the appellant because he did not think that the appellant would have been in a financial position to purchase these properties based upon information that he had received that the appellant was experiencing financial problems.

It is within the inherent discretion of the trial court to require a party to give a bond upon the filing of a motion for new trial pursuant to OCGA § 9-11-62 (b) and the statute does not require that the trial court outline in the order that good cause has been shown. Considering the above evidence adduced at trial, we find that good cause existed and the appellant has not shown that the trial court abused its discretion in requiring the appellant to post a supersedeas bond pending the motion for new trial. Accordingly, this enumeration is without merit.

10. The appellant contends that the trial court erred in requiring the appellant to answer post-judgment interrogatories which included information concerning the appellant's wife, not a party to the action, in violation of the husband-wife privilege under OCGA § 24-9-21.

OCGA § 24-9-21 specifically provides that communications between husband and wife are excluded on the grounds of public policy. However, a bank statement addressed to the appellant's wife does not constitute a communication between appellant and his wife. Accordingly, this enumeration is also without merit.

11. Lastly, the appellant contends that the trial court erred in finding that no supersedeas was in effect pending the appeal, because a timely notice of appeal was filed, payment of the trial transcript had been made, and he was not at fault for the failure of the superior court to transfer the transcript. We disagree.

"In a civil action, the filing of a notice of appeal does not serve as a supersedeas until all costs in the trial court have been paid. OCGA § 5-6-46 (a); [Cit.]" *Duncan v. Ball*, 172 Ga. App. 750, 751 (1) (324 SE2d 477) (1984). In this case, the record shows that the costs of the

appeal had not been paid at the time that the trial court rendered its decision. Accordingly, the trial court was correct in concluding that a supersedeas was not in effect as of May 27, 1992. Although the appellant asserts that this court should alter the rule to establish that if an appeal has been timely filed, a supersedeas is in effect if the bill of costs has not been presented to an appellant, we are without authority to do so. "[W]here, as here, the language of a code section is plain, unambiguous and positive, and is not capable of two constructions, no court has a right to construe it to mean anything other than what it declares. . . . [Cits.]" *Sirota v. Kay Homes*, 208 Ga. 113, 115 (3) (65 SE2d 597) (1951).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED MARCH 12, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993 

Ronald S. Leventhal, *pro se*.
Bauer, Deitch & Raines, Henry R. Bauer, Jr., for appellees.