A93A2284. NORMAN v. THE STATE.
(441 SE2d 94)

BEASLEY, Presiding Judge.

Following the denial of his motion for new trial, Norman appeals his conviction for the robbery of a food mart cashier who was making the store's nightly bank deposit. OCGA § 16-8-40.

About 11:00 p.m. on April 14, 1991, employees Moon and Bryant closed up the food mart and left to make the store's bank deposit. As usual, they were escorted by a unit of the city police department. En route to the bank, the police unit was diverted when a bottle was thrown at the car. Moon and Bryant continued alone to the bank. As Bryant exited the car with the bank bag, she was grabbed from behind and thrown to the curb. The bank bag was taken from her, and the perpetrator ran through the bushes.

Norman and three others, including Norman's brother, were indicted for commission of the crime. Co-indictee Smith testified as a State's witness against Norman. He outlined the conspiracy: Norman's brother and the fourth man threw a beer bottle at the police car to distract it. Norman and Smith were waiting in a carport behind hedges near the bank. After determining that the distraction had worked, Norman went through the hedges and snatched the bank bag from Bryant. The four men met at Norman's sister's house and split the money.

1. Norman contends first that the trial court erred in failing to give the jury a curative instruction or to rebuke the prosecutor when the prosecutor intentionally placed Norman's character in issue during the cross-examination of Norman's sister. See OCGA § 24-9-20 (b).

The following colloquy is at issue.

"[Prosecutor]: Ms. Norman, you're the sister of the defendant?

"[Witness]: Yes, I am.

"[Prosecutor]: You try to help out your brother as much as you can, don't you?

"[Witness]: Do I try to help him out as much as I can?

"[Prosecutor]: Right.

"[Witness]: No. I feel, you know, if they're in the wrong, they're in the wrong, but, you know, if I know that they was in my presence,

you know, I can't do nothing but tell you the truth.

"[Prosecutor]: You've tried to help him in the past on some things, haven't you? You never tried to help — you know me, don't you?

"[Witness]: Yeah, I remember you.

"[Prosecutor]: You've tried to help him on other times, haven't you?

"[Witness]: No. I haven't tried to help him.

"[Defense Counsel]: I'm going to object. And I don't know what [the prosecutor] is getting at, but maybe he does.

"[The Court]: Yes, sir. I'm sure that he must know limitations.

"[Prosecutor]: I know and she knows.

"[The Court]: I would certainly think that he would follow the rules of evidence."

Defense counsel voiced no specific objection, either that defendant's character was being improperly placed in issue or otherwise. Although the trial court apparently understood the basis, normally " '(t)here is nothing for us to review since appellant failed to make his objection at trial on the specific ground he attempts to raise on appeal.' [Cit.]" *Ely v. State*, 192 Ga. App. 203, 205 (3) (384 SE2d 268) (1989). Neither the trial court nor we are required to guess.

Even assuming the ground now urged is what was implicitly asserted and rejected at trial, the contention fails. The apparent intent of the questioning was not to impugn Norman's character but rather to cast doubt on the witness' credibility, including her denial that any money bag was brought into her apartment, by showing her bias in favor of her brother and her history of coming to his aid. Moreover, even if the jury could infer from the colloquy that defendant had a prior brush with the law, it did not improperly place his character in evidence. *Bennett v. State*, 177 Ga. App. 643, 644 (340 SE2d 273) (1986).

The prosecuting attorney's attempted testimony or comment on what the evidence would show if he were allowed to elicit it is improper and should have been rebuked even in the absence of a specific objection to it or motion for mistrial. See in this connection *State v. Kennedy*, 49 Or. App. 415, 619 P2d 948 (1980), rev'd and remanded sub nom. *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982), aff'd sub nom. *State v. Kennedy*, 61 Or. App. 469, 657 P2d 717, aff'd 295 Or. 260, 666 P2d 1316 (1983). The failure to do so does not require reversal in this case. See *Jones v. State*, 250 Ga. 166, 168 (3) (296 SE2d 598) (1982).

2. Norman enumerates as error the failure to exclude certain testimony by chief jailor Burgess. She testified that after she handed Norman an application for appointed counsel and Norman saw the charges against him which were reflected on the form, Norman com-

mented to Burgess "that he didn't see how he could be charged with aggravated assault when he did not use a stick or anything to hit the woman, he just knocked her down when he robbed her" and "that they could only be charged — they could only charge one person with aggravated assault, the others would have to be charged with simple battery or accessory." Her testimony was based on her recollection as refreshed by notes she made immediately after the incident.

The question is whether the jailor, a peace officer, was required to give Norman the *Miranda*[1] warnings prior to, and in connection with, the form. He had been advised of his rights under *Miranda* at the time of his arrest approximately two weeks previously. She had taken the forms back to the cell for three inmates, one of whom was defendant. The forms are provided to the jail to give to all indigents who do not have counsel. It was routine for her to do this, so it could be determined whether appointed counsel was needed. She handed defendant the form and told him that if he wanted an appointed attorney, he had to complete and sign it. He looked at the form and, as a result of seeing the precise charges against him as recited on the form, he made the incriminating statements. The jailor did not ask any questions other than whether he wanted an appointed attorney.

As urged by Norman, the issue under the federal constitution is governed by *Rhode Island v. Innis*, 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980). In that case, the Court established that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301.

The form is not in the record, but the record does show its nature and purpose and the fact that the charges were contained on it. We might consider this exercise as questioning "normally attendant to arrest and custody," since it was a matter of routine so as to assure the jailed person's right to counsel. This would exclude it from the type of interrogation which must be preceded by *Miranda* warnings. However, we do not choose to do so, because it may not always be routine and because there is a stronger leg for the analysis to stand on.

Presenting a jailed person, who has no attorney, with a questionnaire to determine eligibility for appointed counsel does not, without more, constitute "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect. . . ." Id. at 301. There is no evidence of coercion or subterfuge. There is no evidence of any question on the form which would be reasonably

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

likely to evoke an incriminating response. The subject matter of the questions, so far as the record indicates, related not to the crime at all but rather to a different subject matter, i.e., Norman's financial condition and desire for appointed counsel. The nature of such questions and their context in light of the purpose for asking them render them not "reasonably likely to elicit an incriminating response." Id. at 302.

More importantly in this case, it was not the questions which elicited the statements. It was the recitation of the charges against the jailed arrestee. As far as the jailor knew, this was the first time Norman was made aware of the precise charges. When he saw them, he reacted in a spontaneous verbal way, responding when no response was called for. There is no evidence, nor can we surmise, that the jailor should have known that presenting the charges to Norman in such a manner was reasonably likely to evoke an incriminating response. Nor is there any evidence that the charges recited on the form were contrived or fictitious, so as to elicit an outburst, such as the practices discussed in *Miranda* and referred to in *Innis*, supra at 299.

We hold, then, that the evidence of defendant's statements was not inadmissible. They were made after Burgess merely handed Norman the form and "told him that if he wanted an appointed attorney, he needed to fill it out and sign it." No *Miranda* violation occurred.

3. Norman also contends that in responding to a defense objection, the trial court improperly expressed an opinion on the facts of the case, thereby contradicting the fundamental presumption of innocence.

During redirect examination of jailor Burgess as to whether or not it was fair to assume that Norman knew what he was arrested for when she gave him the form to complete after he had been jailed, defense counsel objected that "the facts in the matter or what [Burgess is] confined to testify about, [Burgess] wasn't present at the time [Norman] was arrested and doesn't know —" The court stated, "Well, just — you know, it's a matter of common sense. Certainly, everybody would know why they are arrested, I think, or they would be told why they were being arrested or were arrested."

Norman concedes that no objection was made at trial because trial counsel "probably found it awkward to object to a comment made by the trial judge." He urges that review is required because the court's comments violated fundamental due process.

First, trial counsel's legal and ethical obligations to object to perceived trial error are not obviated in circumstances in which counsel might feel "awkward." Appropriate exception to court rulings is understood as not being a personal affront to the court but a necessary step in preserving valid legal issues for review. See Division 1, supra.

In any event, the comments at issue were not opinion about the facts of the case in contradiction to, or as undermining, the presump-

tion of Norman's innocence. They addressed whether defendant knew what he was under arrest for, at the time he made the incriminating statement. This was not a contested issue of fact. The jailor had already testified that the statement was made in response to defendant's seeing the charges on the indigency form when she handed it to him. Although the court's comment was an unnecessary statement of what the court perceived as common knowledge of procedure and what an arrested person would know, in ruling on defendant's implied hearsay objection to the State's double question, the comment did not constitute reversible error.

4. Next, Norman contends that the court erred in failing to instruct the jury that violation of the order of sequestration of witnesses by the prosecutor in regard to State's witness Glaze should be considered in determining the weight and credit accorded to Glaze's testimony.

Defense counsel did not request any such instruction to the jury but rather requested that Glaze "be precluded from any testimony." More significantly, however, the complained-of exchange between the prosecutor and State's rebuttal witness which occurred in the courthouse hallway on that morning of trial did not violate the rule of sequestration. "The rule is that 'either party shall have the right to have the witnesses of the other party examined out of the hearing of each other.' OCGA § 24-9-61. The rule does not prohibit discussions between an attorney [for a party in] the case and a prospective witness, at least so long as the attorney talks to him separately from the other witnesses and does not inform him of previous testimony. [Cits.]" *Ross v. State*, 254 Ga. 22, 28 (4) (a) (326 SE2d 194) (1985). There is no suggestion that other witnesses were present during the discussion with Glaze or that the prosecutor improperly informed her of other testimony.

Norman argues in his brief that the court should have made further inquiry about possible violation of the rule. This is not considered because "[e]numerations may not be enlarged by brief on appeal to cover issues not contained in the original enumeration. [Cit.]" *Newberry v. State*, 184 Ga. App. 356, 357 (1) (361 SE2d 499) (1987).

5. The final enumeration is that "the trial court erred by giving an *Allen* charge to the jury prematurely and then directing the jury to again retire 'for a reasonable time. . . .' " He maintains that the combination of the charge and the instruction to retire under such "reasonable time" limitation placed undue pressure on the jury to expedite consideration of the evidence in order to reach a verdict.

Defense counsel made no objection to the substance of the charge in general nor specifically to the now-targeted language. In any event, " '[a] trial court may, after the jury has had a case under consideration and indicates that it is unable to agree on a verdict, inquire how

the jury stands numerically. [Cits.]' [Cit.] . . . ' "The decision of whether to give a jury in disagreement the 'Allen' charge is generally left in the discretion of the trial judge." [Cit.]' [Cit.]" *Banks v. State*, 169 Ga. App. 571, 572 (2) (314 SE2d 235) (1984).

The giving of the charge was not an abuse of the court's discretion. It was not given until the second day of deliberation and after the court twice perceived that the jury stood divided. Nor was the charge itself error. Asking the jury to retire for a reasonable time did not impermissibly restrict its deliberations nor imply that if it did not render a verdict shortly, a mistrial would result.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED FEBRUARY 16, 1994.

*Huguenin, Annis & Lewis, John M. B. Lewis IV,* for appellant.
*Dennis C. Sanders, District Attorney, John C. Hammond, Assistant District Attorney,* for appellee.