## A04A1854. FLOWERS et al. v. UNION CARBIDE CORPORATION.
### (610 SE2d 109)

MILLER, Judge.

After Charles Flowers' death from mesothelioma, his heirs brought this wrongful death action against a number of defendants including Union Carbide Corporation, which had mined a form of asbestos to which he was allegedly exposed. At the conclusion of trial, the jury brought in a verdict for Union Carbide, by then the sole remaining defendant. On appeal, the Flowerses argue that the trial court erred when it excluded certain evidence, when it presented a stipulation between the parties to the jury, and when it denied their motion for new trial. We find no actionable error and affirm.

This case's unfortunate sequence of events began when, after years of employment at a DuPont plant in Kinston, North Carolina, Charles Flowers contracted mesothelioma, a rare and lethal form of cancer. After his death, the deceased man's widow and sons (the Flowerses) brought the present action against over two dozen defendants, alleging that he died as a result of exposure to a variety of asbestos-containing compounds. One of these, known as "Ready-Mix" and manufactured by Georgia-Pacific Corporation, was normally used to seal cracks in sheetrock and joints between sheetrock walls. Georgia-Pacific sometimes purchased a form of asbestos known as "Calidria" from Union Carbide for use in products including Ready-Mix. There was conflicting evidence as to whether Ready-Mix was used at the plant where Flowers worked, and some evidence that Flowers was exposed there to other forms of asbestos known to cause mesothelioma, as when old pipe insulation was removed and replaced.

During voir dire, the parties determined that some of their deponents, especially Drs. Hyde and Sawyers, would be testifying as to the medical condition of workers at the King City, California plant where Union Carbide mined Calidria, and that the doctors' testimony would be based in part on King City documents that had not yet been produced. The court ordered Union Carbide to obtain the King City records, and offered the Flowerses either a continuance or a voluntary dismissal with the opportunity to refile on a fast track so as to give them time to review these materials. The plaintiffs elected to proceed with their case nonetheless, though they later sought to introduce some of the King City documents during the testimony of their expert epidemiologist. The trial court ruled that since the epidemiologist could not offer any opinions as to the medical records, they were inadmissible during his testimony. After the jury returned its verdict against them, the plaintiffs moved for a new trial on the basis of this evidence.

Two other relevant disputes at trial involved the question of Calidria's presence in Ready-Mix. Named for a former Georgia-Pacific employee, the so-called "Lehnert deposition" concerned the history of that company's use of Calidria in Ready-Mix. The Flowerses wanted to use the Lehnert deposition to show that Calidria had likely been present in the Ready-Mix to which Flowers was allegedly exposed. The court ruled the deposition inadmissible.

Later, the Flowerses obtained a stipulation from Georgia-Pacific. It read:

> Georgia-Pacific Corporation ("Georgia-Pacific") states and stipulates as fact for purposes of the instant action only that, from December 29, 1969 to May 4, 1977, Georgia-Pacific

manufactured joint compounds, including Ready-Mix joint compound, that contained Calidria Asbestos purchased from Union Carbide Company. According to Georgia-Pacific's records, Georgia-Pacific manufactured Ready-Mix joint compound made at the plants listed below containing Raw Calidria Asbestos during the time periods shown.

The stipulation then listed five plants and five time periods, the earliest of which began in December 1969 and the last of which ended in May 1977.

Union Carbide objected to the stipulation, arguing that by agreeing to dismiss Georgia-Pacific in exchange for it, the heirs were "enlist[ing] the assistance of Georgia-Pacific to build a case against [Union Carbide]." Shortly thereafter, the trial court assured Union Carbide that it would "try to do anything [it could]" to obtain new testimony from Lehnert or another Georgia-Pacific employee that would put the stipulation into proper context. The Flowerses argued that the stipulation contained "facts that were true" concerning the presence of Calidria in Ready-Mix, and continued:

> [Georgia-Pacific and Union Carbide] may want to have evidence that will show [that] the stipulation is not accurate[,] as we believe the record of Georgia-Pacific and all the information I've got show[s,] and they can bring that up in their case-in-chief. *But our burden is to prove our case, and this [stipulation] is what proves our case.* If they have got any evidence to rebut it, any deposition or live witnesses, they can bring them. But this is exactly what the court should foster[:] a resolution between parties that is based upon the truth.

(Emphasis supplied.) After noting Union Carbide's objections, the trial court instructed counsel for Georgia-Pacific to read the stipulation to the jury. Immediately after the stipulation was read, the court said: "[I]n consideration for that stipulation, Georgia-Pacific is dismissed from this action."

From the moment they obtained this stipulation from Georgia-Pacific, the Flowerses showed no further interest in obtaining testimony from Lehnert or anyone else concerning the formulation of Ready-Mix. In a direct exchange for Union Carbide's abandonment of its request to depose Lehnert or any other Georgia-Pacific witness, the Flowerses later stipulated to the admissibility and authenticity of documentary evidence concerning Georgia-Pacific's Ready-Mix formulas. At the end of trial, and after four days of deliberations, the jury

returned a verdict for Union Carbide, and judgment was entered in its favor. The Flowerses' motions for new trial were denied.

On appeal, the Flowerses enumerate four errors: (1) that the court should have admitted the Lehnert deposition; (2) that the court mishandled the presentation of the Georgia-Pacific stipulation; (3) that the King City records were improperly excluded; and (4) that a new trial should have been granted in light of the King City records.

1. The Flowerses first argue that the court erred in excluding the Lehnert deposition. They claim that because Lehnert was "outside the subpoena power of the trial court," and therefore unavailable, the trial court should have allowed his deposition testimony. To obtain the admission of the Lehnert deposition under the hearsay exception for former testimony, the Flowerses had the burden of showing that (1) Lehnert was unavailable; (2) his deposition testimony was given under oath at a previous proceeding; and (3) the parties and issues in the previous proceeding were substantially similar to those in the case-in-chief. OCGA § 24-3-10; *Pope v. Fields*, 273 Ga. 6, 7-8 (1) (a) (536 SE2d 740) (2000). Whether a witness is unavailable within the meaning of the statute "depends upon the diligence shown by the party seeking to use his testimony . . . in ascertaining where the witness is and in attempting to bring him into court." (Citation and punctuation omitted.) *Smith v. State*, 247 Ga. 453, 454-455 (1) (276 SE2d 633) (1981). We will not reverse a trial court's finding that prior testimony should not be admitted because the party seeking to introduce that testimony did not show that the witness was unavailable unless it appears that the trial court abused its discretion in so finding. Id.

(a) We have reviewed the record, and conclude that the trial court did not abuse its discretion when it found that absent any effort by the Flowerses to subpoena Lehnert in this case, his deposition in the prior proceeding should not be admitted. *Smith*, supra, 247 Ga. at 454-455 (finding evidence to support trial court's conclusion that party seeking to introduce testimony had failed to show that witness could not be found); *Century Dodge v. Mobley*, 155 Ga. App. 712 (1) (272 SE2d 502) (1980) (when party seeking to introduce testimony has made no attempt to obtain witness, admission of former testimony was reversible error).

(b) Moreover, under the apparently mistaken belief that the Georgia-Pacific stipulation would "prove [their] case," the Flowerses stipulated to the admissibility and authenticity of the Ready-Mix formula documents released by Georgia-Pacific. In return, Union Carbide pledged not to depose Lehnert or any other Georgia-Pacific employees. For their part, and from the moment this deal was announced, the Flowerses never hinted that they needed evidence of any kind from any Georgia-Pacific employee, including Lehnert.

Even if we were to assume both that Lehnert's previous testimony should have been admitted and that the court's error in excluding it amounted to an abuse of discretion, then, the Flowerses later induced both Union Carbide and the court to abandon their efforts to obtain testimony from Lehnert or any other Georgia-Pacific employee. Thus they have nothing to complain of on appeal. See *City of Demorest v. City of Baldwin,* 251 Ga. App. 855, 855-856 (554 SE2d 824) (2001) (where court adopts arbitration findings negotiated by parties, neither can complain of court's findings as error on appeal); *Swanson v. Dept. of Transp.,* 200 Ga. App. 577, 579 (2) (409 SE2d 74) (1991).

2. The Flowerses contend that the trial court erred in its manner of introducing Georgia-Pacific's stipulation. They argue that the court implied that they had bought testimony from Georgia-Pacific in return for the company's dismissal from the case. We disagree. The Flowerses sought to admit the stipulation to which they now object over Union Carbide's repeated objections, and not only failed to object to the trial court's statement that Georgia-Pacific was dismissed from the case "in consideration for [it]," but immediately confirmed the court's statement with the words, "Yes, Your Honor, Georgia-Pacific is no longer in this case." Thus the Flowerses induced any alleged error here as well. *City of Demorest,* supra, 251 Ga. App. at 855-856.

3. In their third and fourth enumerations, the Flowerses argue that the trial court erred in refusing to allow the introduction of the King City medical records from the Calidria plant during the testimony of their expert epidemiologist, and that they should have been granted a new trial for this newly discovered evidence. We disagree.

(a) The question whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion. *Moresi v. Evans,* 257 Ga. App. 670, 674 (2) (572 SE2d 327) (2002). The Flowerses' epidemiologist was not a licensed medical doctor, and thus could not offer his expert opinion as to the medical histories of individual patients. See *Riggins v. Wyatt,* 215 Ga. App. 854, 855 (452 SE2d 577) (1994). The trial court did not abuse its discretion when it held that the epidemiologist's testimony should proceed without reference to the King City records. Id. (professor of applied biomechanics in surgery cannot offer opinion as to medical care given to particular patient). Moreover, some of the King City medical records were admitted later in the trial during the Flowerses' cross-examination of a defense expert who was a medical doctor. Both parties took this opportunity to explore the implications of the records at length, including the Flowerses' suggestion that the workers died as a result of exposure to asbestos. Even assuming that the court erred in admitting the records during the epidemiologist's testimony, then, this was harmless error when some of the same

records were later admitted. See *Buford v. Benton*, 232 Ga. App. 102, 104 (3) (501 SE2d 272) (1998) (even if summary of medical records improperly excluded, error was harmless where same information brought out on direct examination).

(b) In order to obtain a new trial on the ground of newly discovered evidence, the Flowerses had the burden of showing that (1) the evidence came to their knowledge since trial; (2) its failure to come to light sooner was not the result of a lack of diligence on their part; (3) it was so material as to make a different verdict likely; (4) it is not merely cumulative; (5) the affidavit of the witness himself should be procured or its absence accounted for; and (6) it served some other effect than mere impeachment. *Leventhal v. Seiter*, 208 Ga. App. 158, 161 (2) (430 SE2d 378) (1993); see OCGA § 5-5-23. A trial court's denial of a motion for new trial on the ground of new evidence will not be reversed absent an abuse of discretion. *Leventhal*, supra, 208 Ga. App. at 162 (2).

Soon after the King City records came to light, the court ordered Union Carbide to produce them, and offered the Flowerses either a continuance or a fast-track refiling to obtain and digest the records. They refused this offer, and thus cannot complain of the consequences on appeal. See *Green v. Sommers*, 254 Ga. App. 446, 446-447 (1) (562 SE2d 808) (2002) (induced error provides no basis for reversal on appeal). Nor can we say that the trial court abused its discretion when it twice rejected the Flowerses' argument that admission of the King City records would probably have produced a different result. See *Gill v. Spivey*, 264 Ga. App. 723, 724 (1) (592 SE2d 132) (2003) (when trial court finds that allegedly new evidence was not likely to change result, dispute over "eleventh-hour production of information" was one for discovery, not motion for new trial).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JANUARY 27, 2005.

*Martin & Jones, Clinton W. Sitton*, for appellants.

*Alston & Bird, Dow N. Kirkpatrick II, Elizabeth A. Price, Hawkins & Parnell, J. Bruce Welch, Nelson, Mullins, Riley & Scarborough, Sara S. Turnipseed*, for appellee.