## A09A1934. LYNCH v. HORTON.
(692 SE2d 34)

MILLER, Chief Judge.

After a New Jersey appellate court vacated a trial court's custody award to Chesare Horton on jurisdictional grounds, Horton filed a petition for modification of custody, visitation and child support against Deborah Hinton-Lynch in Cobb County, seeking custody of their minor daughter. The trial court awarded sole custody of the child to Horton, and Lynch appeals, arguing that the trial court erred in granting Horton's petition because (i) Horton did not move to set aside the domesticated New Jersey judgment; (ii) Horton filed his petition as a counterclaim; (iii) the trial court failed to find that Horton had unclean hands notwithstanding evidence that he took the child across state lines, in violation of Lynch's custodial rights; and (iv) Horton failed to prove a material change of circumstances affecting the minor child to warrant a change in custody. Finding the existence of material conditions affecting the child's welfare which would warrant a change of custody and promote the child's best interest, we affirm the trial court's order modifying custody.

We will affirm a trial court's decision on a petition to change custody if there is any reasonable evidence in the record to support it. See *Mitcham v. Spry*, 300 Ga. App. 386 (685 SE2d 374) (2009). "When reviewing a child custody decision, this [C]ourt views the evidence presented in the light most favorable to upholding the trial court's order." (Footnote omitted.) Id.

So viewed, the evidence shows that Lynch and Horton are the parents of a minor daughter, T. H. Horton filed a petition to legitimate T. H., and in 2002, the trial court issued an order declaring T. H. to be Horton's legitimate child; awarding Lynch sole custody; and granting Horton supervised visitation for two years, followed by unsupervised visitation. By separate consent order, Horton was obligated to pay child support to Lynch. Later in 2002, Lynch moved to New Jersey. Thereafter, on several occasions, Horton had little or no visitation with T. H. because Lynch was either not at home or had moved when he traveled from Georgia to New Jersey to visit with the child. Nor did Lynch communicate with Horton or return his phone calls. In October 2004, when Lynch took T. H. to her mother and stepfather's home in North Carolina, she failed to inform Horton of such fact. T. H. remained with Lynch's mother and stepfather until late January 2005.

In October 2004, Lynch filed a petition in New Jersey to reinstate Horton's supervised visitation, alleging that Horton had left T. H. in the care of his 12-year-old daughter and had smoked in the presence of T. H., who had asthma. Lynch's petition was

scheduled for a hearing on January 30, 2005, but Lynch failed to appear, and the trial court issued a bench warrant for her arrest. The New Jersey trial court rescheduled the hearing for the following day and allowed Horton to appear by phone. On that same day, Lynch's mother's husband, Bruce Frierson, called Horton to inquire about his whereabouts. Based on that telephone call, Horton picked up T. H. from Lynch's mother's house in North Carolina and returned to Georgia with the child.

On January 31, 2005, the New Jersey trial court denied Lynch's petition and entered an order finding that Lynch had no standing to modify Horton's visitation because she had relinquished custody of the child to "someone outside the Court's order," i.e., Lynch's mother. The New Jersey trial court then allowed T. H. to remain with Horton, given that she had been staying with him since the previous day when he picked up T. H. from Lynch's mother's house in North Carolina.

In February 2005, Lynch went to Horton's residence in Georgia, accompanied by Cobb County law enforcement, and presented Horton with a forged court order purporting to modify the New Jersey order entered on January 31, 2005 and to award custody of T. H. to Lynch. Horton convinced the police that the order appeared to be inauthentic, and the police did not remove the child from Horton's home. On March 3, 2005, at the direction of the New Jersey trial court, Horton filed a petition to modify custody. Following a hearing on March 17, 2005, at which neither Lynch nor her attorney appeared, the New Jersey trial court granted custody of the minor child to Horton and awarded supervised visitation to Lynch ("New Jersey order").

On July 8, 2005, Lynch filed a petition to modify custody in Cobb County, which the trial court denied. Thereafter, Lynch filed a motion to vacate and set aside the New Jersey order, and on September 23, 2008, a New Jersey appellate court concluded that the New Jersey trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act to modify custody in Horton's favor, vacated the New Jersey order and directed dismissal of Horton's petition for change of custody. On September 24 and 25, 2008, Lynch filed actions to domesticate the New Jersey final judgment of dismissal in Cobb County. On September 25, 2008, Lynch advised Horton that she planned to pick up the child. In response, Horton filed a motion for emergency temporary custody of the child and a petition for modification of custody in Cobb County. The trial court issued an order granting immediate emergency custody of the child to Horton, and in December 2008, the trial court awarded sole custody of the child to Horton and supervised visitation to Lynch.

1. For the first time on appeal, Lynch argues that the trial court erred in modifying custody because Horton failed to set aside the domesticated New Jersey judgment and res judicata barred Horton from relitigating a second custody action between the parties. We disagree.

During the hearing on Horton's petition for modification of custody, Lynch failed to object to the proceedings on the grounds asserted above. Absent a contemporaneous objection, this enumeration of error presents nothing for appellate review. See *Bell v. Forster*, 211 Ga. App. 76 (438 SE2d 145) (1993) (where party failed to challenge trial court's grant of attorney fees based on quantum meruit, the issue was waived on appeal).

2. Lynch contends that the trial court erred in allowing Horton to bring his petition for modification of custody as a counterclaim. We are not persuaded.

OCGA § 19-9-23 (a) provides that "[e]xcept as otherwise provided in this Code section, . . . any complaint seeking to obtain a change of legal custody of the child shall be brought as a separate action in the county of residence of the legal custodian of the child."[1] OCGA § 19-9-23 (c) prohibits bringing a complaint seeking to change legal custody "in response to any other action. . . ." It is well settled that "this statute precludes a counterclaim seeking a change in custody." (Citations omitted.) *Seeley v. Seeley*, 282 Ga. App. 394, 396 (1) (638 SE2d 837) (2006).

On September 24 and 25, 2008, Lynch filed actions to domesticate the final judgment in the New Jersey proceedings in Cobb County. See *Wylie v. Blatchley*, 237 Ga. App. 563, 564 (1) (515 SE2d 855) (1999); OCGA §§ 9-12-130; 9-12-133. On September 25, 2008, Horton filed his petition for modification of custody and a motion for emergency temporary custody order. Lynch thereafter filed an answer and affirmative defenses to Horton's petition for modification of custody. We cannot conclude from this record that Horton's petition was filed in response to Lynch's action to domesticate the foreign judgment since Horton's petition bears a different case number from Lynch's petitions and the parties' actions were filed almost simultaneously. See *Armstrong v. Rapson*, 299 Ga. App. 884, 885 (683 SE2d 915) (2009) (where party failed to show error affirmatively from the record, appellate court assumes the judgment below was correct).

3. The trial court's finding to the contrary notwithstanding,

---

[1] Lynch appears to be a resident of Maryland, but she does not claim that venue was improper in Cobb County. Nor did Lynch preserve this defense in her answer. Therefore, we need not consider this issue.

Lynch argues that Horton had unclean hands because he took the child from her mother and stepfather's house in North Carolina to Georgia when she had lawful custody of the child. Lynch therefore claims the trial court's grant of Horton's petition violated public policy and the unclean hands doctrine under OCGA § 23-1-10 should apply. We disagree.

The unclean hands maxim as set forth in OCGA § 23-1-10 applies to equitable rights which relate directly to the cause of action. *Zaglin v. Atlanta Army Navy Store*, 275 Ga. App. 855, 858 (2) (622 SE2d 73) (2005). "[This] rule regarding equitable rights[, however,] does not apply in child custody cases." *Green v. Krebs*, 245 Ga. App. 756, 760 (4) (538 SE2d 832) (2000).[2] While the trial court is charged with the duty "to exercise its discretion to look to and determine solely what is for the best interest of the child . . . and what will best promote [her] welfare and happiness[,]" the fact that Horton took T. H. from Lynch's mother and stepfather with their consent does not mandate a finding that Lynch retain custody of T. H. (Punctuation and footnote omitted.) Id.; OCGA § 19-9-3 (a) (2). Further, the trial court was authorized to consider Horton's good faith in picking up T. H. after receiving a telephone call from Frierson concerning his lack of contact with the child and learning of T. H.'s whereabouts.

4. Lynch argues that the trial court abused its discretion by awarding custody of the child to Horton because the evidence failed to show a material change in circumstance affecting the child's welfare. We disagree.

> A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child.

(Footnote omitted.) *In the Interest of T. S.*, 300 Ga. App. 788 (686 SE2d 402) (2009); OCGA § 19-9-3 (a) (2). The trial court may consider a variety of relevant factors in determining the best interest of the child, such as:

> (G) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory

---

[2] Compare OCGA § 19-9-24 ("A physical custodian shall not be allowed to maintain against the legal custodian any action for . . . change of child custody[ ] . . . so long as custody of the child is withheld from the legal custodian in violation of the custody order."). We note that this statute was inapplicable once the Cobb trial court granted immediate emergency custody of T. H. to Horton. Nor does Lynch rely on this statute.

environment and the desirability of maintaining continuity; . . . (L) The home, school, and community record and history of the child[ ] . . . (N) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child[.]

OCGA § 19-9-3 (a) (3). The evidence sufficient to warrant a modification of custody can consist of a change in material conditions which have a positive effect on the child's welfare as well as changes which adversely affect the child. See OCGA § 19-9-3 (b) (trial judge may modify custody "based upon a showing of a change in any material conditions or circumstances of a party or the child"); *Moses v. King*, 281 Ga. App. 687 (637 SE2d 97) (2006); *Weickert v. Weickert*, 268 Ga. App. 624, 627 (1) (602 SE2d 337) (2004) (trial court is not required to find a material change for the worse in order to modify custody).

The record shows that the 2002 legitimation order was the last valid custody order. Thus, the burden was on Horton to prove a new and material change in circumstance which affected T. H.'s welfare since 2002. See *Martin v. Greco*, 225 Ga. App. 752, 753 (1) (484 SE2d 789) (1997); OCGA § 19-9-3 (b). The trial court granted Horton's petition and based its decision on the following findings of facts: (1) Lynch's abandonment of T. H. for several months in 2004; (2) Lynch's admitted forgery of a court order in an attempt to abscond with T. H.; and (3) T. H.'s continued residence with Horton in Cobb County for approximately three years and good performance in school. Considering the evidence, "we are mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Mitcham*, supra, 300 Ga. App. at 386.

Pretermitting whether the trial court's finding of "abandonment" was correct, the trial court was faced with evidence that Lynch had left her daughter in the care of her mother and stepfather from October 2004 until January 2005 without notifying Horton of the child's whereabouts. Prior to, and during that time frame, Horton had virtually no contact with Lynch, which inhibited his visitation rights with T. H. The trial court was authorized to find that Lynch's act of leaving T. H. with her mother and stepfather without notice to Horton disrupted the stability of the child's environment, separating her from Lynch for a three-month period, and isolated the child from her father. Although the trial court did not specifically find that the denial of Horton's visitation rights was a change in condition, the import of the trial court's order supports

such a finding. See *Jones v. Kimes*, 287 Ga. App. 526, 528 (652 SE2d 171) (2007) (repeated denial of the noncustodial parent's visitation rights may authorize a change of custody). We cannot conclude that the child's welfare was not adversely affected during this three-month period. Moreover, Lynch's failure to inform Horton of the child's whereabouts demonstrated her lack of willingness "to facilitate and encourage a close and continuing parent-child relationship between the child and [Horton], consistent with the best interest of the child[.]" OCGA § 19-9-3 (a) (3) (N).

Further, in light of Lynch's forgery of a court order and admission to such crime, the trial court was authorized to conclude that Lynch's actions were of "grave concern," showing her disregard for the law and the child's well-being. On the other hand, while continuously residing with Horton for more than three years, T. H. demonstrated academic excellence, maintaining an "A" average in school. The trial court could reasonably infer that T. H. was thriving in her father's care such that granting custody to Horton promoted her best interest toward continued stability. OCGA § 19-9-3 (a) (3) (G), (L). "[I]t is not our function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments as to the welfare of the child." *Green*, supra, 245 Ga. App. at 759. Although Horton's custody of T. H. was the result of a now-vacated New Jersey custody order, our decision is unaffected by this ruling because the order was reversed and vacated on jurisdictional grounds, not on the merits. At the direction of the New Jersey trial judge, Horton acted in good faith in filing a petition to change custody in New Jersey.

Accordingly, we conclude that the trial court did not abuse its discretion by modifying the prior custody order and granting custody of T. H. to Horton. *T. S.*, supra, 300 Ga. App. at 790 (2).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 3, 2010 — ■■■■■■■

Deborah Hinton-Lynch, *pro se*.

Hallmark, Bowman & Hallmark, Anthony A. Hallmark, Eason, Kennedy & Crawford, David S. Crawford, for appellee.