A11A1728. SHOTWELL v. FILIP.
A11A1729. FILIP v. FILIP.
(722 SE2d 906)

BARNES, Presiding Judge.

In these companion appeals, the biological mother and the maternal grandmother of the minor child J. F. appeal the trial court's order modifying a previous custody award and granting primary physical custody of the child to the biological father. Discerning no abuse of discretion by the trial court, we affirm.

On appeal from a child custody decision, we view the evidence in the light most favorable to upholding the trial court's order. *Lynch v. Horton,* 302 Ga. App. 597 (692 SE2d 34) (2010). So viewed, the record shows that the biological parents of J. F. married in August 1998 and resided in Georgia. J. F. was born on November 11, 2000, and he lived with both parents until their separation in March 2002, when he began living solely with his mother.

The parents divorced in July 2002. Under the parties' settlement agreement incorporated into the final judgment and decree, the parents were granted joint legal custody of J. F., while the mother was granted primary physical custody. The father was granted weekend visitation with the child. The settlement agreement also provided that each parent was "entitled to complete, detailed information from any teacher or school giving instruction to the child . . . and [was] to be furnished with copies of all reports given by them to the other parent." It further provided that each parent was "entitled to complete detailed information from any pediatrician, general physician, dentist, consultant, or other specialist attending the child, for any reason whatsoever, and [was] to be furnished with copies of reports given by the latter, or any of them, to the other parent." Similarly, each parent was to "promptly notify the other in the event of any illness, accident, or other matter seriously affecting the child."

In April 2004, the mother moved to Oklahoma for work-related reasons and leased a small apartment. When she moved, the mother left J. F. in the care and custody of the maternal grandmother in Missouri, whose home was about five hours away from the mother's new home in Oklahoma. The mother assured the father that the

94

child would come and live with her once she got settled in Oklahoma. Following the mother's decision to move, the father continued to reside in Georgia but visited J. F. in Missouri as his job permitted.

In 2005, the mother purchased a home in Missouri with the intention of moving there, securing employment, and having J. F. live with her. In August of that same year, the father filed a petition for contempt against the mother, contending that she had interfered with his visitation rights by moving J. F. to a different state. However, the petition was dismissed after the parties entered into a consent order in 2006 modifying the father's visitation rights. Under the modified visitation schedule, the father was awarded yearly visitation in the form of monthly and quarterly visits with the child, plus four weeks of extended visitation in July and one week in December. The father routinely exercised his visitation rights under the consent order, except for the monthly weekend visits, which were not feasible because of his work schedule and financial considerations.

The mother ultimately was unable to secure a new job in Missouri and instead continued to live in Oklahoma. Although the mother had assured the father that J. F. ultimately would live with her, the child continued to reside with his grandmother. Each year, unbeknownst to the father, the mother executed a power of attorney in loco parentis in favor of the grandmother, giving the grandmother temporary physical custody and control over J. F. The grandmother served as the day-to-day caregiver for J. F., with the mother visiting the child about three weekends per month and on holidays. The grandmother was involved in and took responsibility for J. F.'s medical appointments, schooling, and extracurricular sports activities. Although the father paid child support to the mother, the mother did not pay any set amount to the grandmother for J. F.'s expenses, and she told the father to communicate solely with the grandmother regarding the child and visitation issues. The mother also told the father to use the grandmother's address in Missouri as the contact address for any correspondence associated with the child.

Once J. F. started school in 2006, neither the mother nor the grandmother provided the father with any of his report cards or other student records. Consequently, in August 2007, the father called J. F.'s school and asked for the school to send him copies of the child's report cards. Upon learning that the father had made direct contact with J. F.'s school, the grandmother became upset and indicated to the father that he should have asked her for the school records. Thereafter, the situation between the father and the grandmother "took a turn for the worse," and she began limiting some of the father's visitation with the child, while as before she had been "working with [him] better as far as the visits."

In addition to limiting some of his visitation, the mother and the

grandmother enrolled J. F. in summer school without the knowledge of the father; failed to provide the father with the child's medical records or timely include the father's name on the requisite federal forms so that he could have direct access to the records; and failed to discuss with the father the decision to have braces put on J. F.'s teeth. The mother and the grandmother also failed to inform or discuss with the father the fact that J. F. was to be enrolled in therapy to address issues he was having with anxiety.

Despite the mother's assurances, J. F. never came to live with her, and in October 2009, the father filed a petition for change of custody and child support, contending that there had been a material change in condition affecting the welfare of the child. Among other things, the father alleged that the mother had voluntarily surrendered custody of the child to the grandmother by living in a different state from the child for the past several years; that his visitation rights had been improperly limited following the 2007 school records incident; and that the mother and the grandmother exhibited an ongoing pattern of excluding him from major decisions regarding the child. The mother answered, denying that there had been a material change in condition or that the best interest of the child would be served by transferring primary physical custody to the father. Additionally, the grandmother filed a motion to intervene in the action to oppose the father's petition, and the trial court granted her motion.

Following an evidentiary hearing, the trial court granted the father's petition and awarded him primary physical custody of J. F., with visitation rights afforded to the mother and the grandmother. The trial court also ordered the mother to pay child support to the father. In justifying the transfer in custody, the trial court found that there had been a material change in condition because, among other things, the mother had voluntarily surrendered her right of physical custody and control over J. F. to the grandmother, the father's visits with the child had been limited by the grandmother following the 2007 school records incident, and the father had not been included in or provided with information regarding major decisions affecting the child. The court further found that it would be in the best interest of the child for primary physical custody to be transferred to the father, given that the mother had abdicated her role as a parent to the grandmother. The mother and the grandmother now appeal from the trial court's ruling.[1]

A petition to change child custody should be granted only if the trial court finds that there has been a material

---

[1] The trial court's original order granting the father's petition for a change in custody did not include findings of fact, although the mother had requested that factual findings be

change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. If the record contains any reasonable evidence to support the trial judge's decision on a petition to change custody, it will be affirmed on appeal.

(Footnote omitted.) *In the Interest of T. S.*, 300 Ga. App. 788, 790 (2) (686 SE2d 402) (2009). In evaluating the record, "we are mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citation and punctuation omitted.) *Lynch*, 302 Ga. App. at 601 (4). Guided by these principles, we turn to the contentions in this appeal.

1. *Material Change in Condition.* The mother and the grandmother contend that the trial court abused its discretion in awarding custody of J. F. to the father because the evidence failed to show a material change in condition affecting the child's welfare since the time of the "last custody award" entered in this case. They maintain that the "last custody award" was the 2006 consent order modifying the father's visitation, and they assert that there has been no material change in condition since that time, given that the mother had already moved to Oklahoma and left the child with the grandmother in Missouri when the consent order was entered.

We are unpersuaded by the mother and the grandmother's contention, even if we assume for the sake of argument that the material change in condition had to arise after the entry of the 2006 consent order, which was entered in the context of a separate contempt action and only modified the father's visitation rights. Under Georgia law, the voluntary surrender of physical custody over a child by the custodial parent can constitute a material change of condition. See *Lodge v. Lodge*, 230 Ga. 652 (198 SE2d 861) (1973); *Wilt v. Wilt*, 229 Ga. 658 (193 SE2d 833) (1972). But the determination of whether there has been a voluntary surrender of physical

included in the order pursuant to OCGA § 9-11-52 (a). After the trial court issued its order, the mother again moved for the trial court to include findings of fact. The mother and the grandmother subsequently filed notices of appeal from the trial court's original order, after which the trial court entered an *amended order* that included specific findings of fact and conclusions of law in accordance with OCGA § 9-11-52 (a). The record on appeal has now been supplemented to include the amended order. Although the trial court entered the amended order after the notices of appeal were filed in these companion cases, "this court will not require a vain action" by reversing the original order and remanding for re-entry of the amended order "where full compliance with the . . . purpose [of OCGA § 9-11-52 (a)] has been achieved." *Grizzle v. Fed. Land Bank of Columbia*, 145 Ga. App. 385, 387 (244 SE2d 362) (1978). See *Wiggins v. Darrah*, 135 Ga. App. 509, 510 (2) (218 SE2d 106) (1975).

custody affecting the child's welfare, or a more temporary relinquishment of custody not rising to the level of a material change in condition, is a factual question that falls within the trial court's broad discretion in these matters. See *Redmond v. Walters*, 229 Ga. 713 (194 SE2d 254) (1972); *Thompson v. Thompson*, 153 Ga. App. 80, 80-81 (1) (264 SE2d 558) (1980).

Here, there was evidence at the hearing that after the mother moved to Oklahoma in April 2004 and left J. F. with his grandmother in Missouri, she repeatedly assured the father that the situation was temporary and that J. F. would eventually live with her. By the time of the 2006 consent order, less than two years had passed since the mother's move to Oklahoma, and the mother had recently purchased a home in Missouri and tried to secure new employment there. However, by the time of the father's petition to change custody, an additional three years had passed, the mother remained in Oklahoma in the same job, and the mother testified at the hearing that J. F. had become "established" in Missouri and that she worried about removing him from that environment now that so much time had passed. Under these circumstances, there was evidence that what had begun as a temporary custodial arrangement in April 2004, and arguably could still be construed as such when the 2006 consent order was entered, had evolved into a permanent custodial arrangement by the time the father filed his petition for change in custody in 2009. Accordingly, we cannot say that the trial court abused its discretion in finding that the mother had voluntarily surrendered physical custody and control over J. F. to the grandmother, resulting in a material change in condition. See *Lodge*, 230 Ga. 652; *Wilt*, 229 Ga. 658.

Furthermore, there was evidence that after the entry of the 2006 consent order, the grandmother limited some of the father's visitation with J. F. in retaliation for the 2007 school records incident; that the mother and the grandmother exhibited an ongoing pattern of excluding the father from important medical decisions affecting the child; and that the mother and the grandmother failed to notify the father whenever the mother executed a new power of attorney in loco parentis in favor of the grandmother. These combined, additional circumstances also supported the trial court's finding of a material change in condition. See, e.g., *Foltz v. Foltz*, 238 Ga. 193, 194 (1) (232 SE2d 66) (1977) (parent "cannot . . . contract away the custody of his child to a third party without the other parent's consent"); *Jones v. Kimes*, 287 Ga. App. 526, 528 (652 SE2d 171) (2007) (interference with a noncustodial parent's right to visitation can rise to the level of a material change of condition).

2. *Best Interest of the Child.* The mother and the grandmother also contend that the trial court abused its discretion in finding that

it was in the best interest of J. F. to grant primary physical custody to the father rather than have the child continue to live in Missouri with the grandmother. In this regard, they argue that because the father was unemployed at the time of the hearing and allegedly "ha[d] not seen the minor child for the past 6 years," it was not in the best interest of the child to transfer primary physical custody to the father.

Their argument is without merit. While the father was unemployed at the time of the hearing, there was evidence that the father had been gainfully employed without a lapse of employment until April 2010, and that he was currently enrolled in classes at a technical college and had been applying for jobs with potential employers. There also was some evidence that the father's current wife maintained suitable employment and made adequate income for the family to provide for J. F.'s necessary basic care, particularly when combined with child support from the mother. See OCGA § 19-9-3 (a) (3) (E) (noting that "consideration [should be] made for the potential payment of child support by the other parent" when assessing the capacity and disposition of a parent to provide for the child's necessary basic care).

Furthermore, the mother and the grandmother's assertion that the father has not seen J. F. in the past six years is entirely unsupported by the record. The evidence showed that the father routinely exercised his visitation rights up through the time of the present litigation, except for the monthly weekend visits, which were not feasible because of his work schedule and financial considerations.

The assertions of the mother and the grandmother notwithstanding, the trial court acted within its discretion when it found that awarding primary physical custody to the father was in the best interest of J. F. As previously noted, there was evidence that the mother had voluntarily surrendered her right of physical custody and control over J. F. to the grandmother, and where the custodial parent voluntarily surrenders her custodial rights to a third party, a prima facie right of custody is vested in the noncustodial parent. See *Hansen v. Carpenter*, 211 Ga. 785, 786 (2) (89 SE2d 196) (1955); *Sessions v. Oliver*, 204 Ga. 425, 433 (2) (50 SE2d 54) (1948). There also is a rebuttable presumption under Georgia law that it is in the best interest of the child to award custody to a parent rather than a third party. See *Galtieri v. O'Dell*, 295 Ga. App. 797, 798 (673 SE2d 300) (2009).

In light of this precedent favoring an award of custody to the father, the trial court committed no error. The father presented evidence from a licensed psychologist who opined that the father is a fit and qualified parent to have primary physical custody of J. F. and

will be able to meet the needs of the child in adjusting to a new home. Additionally, a licensed professional counselor who had conducted therapy sessions with J. F. and with the father testified that she did not have any concerns with the father's potential ability to parent the child, and she indicated that she believed it was possible for the child to positively adjust to a change in physical custody. Under these circumstances, the trial court committed no error in finding that it would be in the child's best interest to live with his father rather than his grandmother. As we have emphasized,

> [i]t is not our function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments as to the welfare of the child. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is reasonable evidence to support it. Because there is reasonable evidence to support the trial court's ruling, we cannot say that the trial court abused its discretion in transferring custody to the father.

(Footnote omitted.) *Green v. Krebs*, 245 Ga. App. 756, 759 (1) (538 SE2d 832) (2000).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED FEBRUARY 13, 2012.

*Adrian L. Patrick*, for appellant.
*Eric D. Dell, Curtis J. Dickinson*, for appellee.