**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 25, 2012**

# In the Court of Appeals of Georgia

A12A1046. FIFADARA v. GOYAL.

ADAMS, Judge.

Nimita Fifadara appeals the superior court's order denying reconsideration of, or the grant of a new trial on, its order changing custody of her and Ashok Goyal's only child, A. G., to Goyal, her ex-husband. She contends the court erred by allowing Goyal to present irrelevant evidence at the custody hearing, by modifying custody without reasonable evidence, and by limiting her presentation at the hearing on her motion for new trial.

In reviewing a denial of a motion for new trial on the general grounds, as here, an appellate court can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks *any* evidence by which it could be supported. *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001).

"A trial court is authorized to modify an original custody award upon a showing of new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child." (Citations and punctuation omitted.) *Todd v. Casciano*, 256 Ga. App. 631, 632 (1) (569 SE2d 566) (2002). Any change in custody is subject to the trial court's discretion based on the best interests of the child. *Bodne v. Bodne*, 277 Ga. 445, 446 (588 SE2d 728) (2003). We view the evidence in favor of upholding the trial court's order and will affirm if there is any reasonable evidence to support the decision. *Lifsey v. Lifsey*, 256 Ga. 613 (351 SE2d 637) (1987); *Mitcham v. Spry*, 300 Ga. App. 386 (685 SE2d 374) (2009).

So viewed, the evidence was that Fifadara and Goyal were divorced in February 2009, and the terms of the divorce agreement included joint legal and physical custody of their child, born November 8, 2005, with the parties continuing to reside together for the purpose of co-parenting. Within a few months, however, Fifadara had moved out and, on April 7, 2009, she filed a motion to modify custody in the Superior Court of Gwinnett County, the child's county of residence. On April 21, 2009, Fifadara filed a request to dismiss her petition. Despite this dismissal, however, both Fifadara and Goyal appeared before the judge who, following a 30-minute hearing on June 5, 2009, entered an order modifying child support and

visitation and naming Fifadara as the primary physical custodian under the terms of a new parenting plan and custody arrangement.

Barely one month later, Goyal filed his own motion to change custody and to modify his support obligations in DeKalb County where Fifadara had moved with the child; he also sought contempt on various grounds and raised other claims. With regard to custody, Goyal alleged that a change of material circumstances occurred after the June hearing in three ways: Fifadara had proven incapable of honoring his court-ordered rights and had engaged in ploys to cut off his contact with A. G.; she had physically and psychologically abused A. G., causing DFACS to become involved; and she had stated an intent to re-locate with A. G. to another state. He argued that her behavior affected A. G. because each event was an attempt to impede his bond with the child. Seventeen months later, following a two-day hearing held on September 24 and December 10, 2010, the court entered its order placing legal and physical custody of A. G. with Goyal. The court held that after the June 5, 2009 order, Fifadara repeatedly interfered with Goyal's visitation and prevented him from exercising his court-ordered parenting time. The court denied Goyal's assertions of contempt of court.

The evidence presented during the September and December hearings was that, following the entry of the June 5th order, Goyal and Fifadara, with a couple of her friends, met at a TGIF restaurant on June 11, 2009, to discuss various matters, including Fifadara's desire to move out of state with A. G., to which Goyal objected. Following this meeting, during which Fifadara consumed wine, she got in the car with Goyal and they spent the night at her apartment. Fifadara said she woke up the next morning in bed with Goyal and determined she had been raped. On June 16, 2009, Fifadara filed a Petition for a Protective Order in Gwinnett County, alleging that she had been raped and requesting permission to move out of state with A. G. Fifadara obtained a Temporary Protective Order pending a hearing. Following that hearing on June 25, 2009, the trial court dismissed the petition, finding that "[p]laintiff got drunk with her ex-husband blacked out - I woke up naked the next day with him."

Because of the filing of this petition, Goyal was denied his visitation for Father's Day, 2009, and did not see A. G. for nine days. Fifadara also filed a report with the police seven days after the TGIF meeting, resulting in Goyal's being interviewed by a constable who determined no charges were warranted. A warrant was issued for Fifadara for a false report of a crime.

Although the parenting plan provided that visitation was to be determined by the Gwinnett County school calendar, Goyal was deprived of his December 25, 2009, through January 3, 2010, Christmas holiday visitation with A. G. because Fifadara had enrolled A.G. in a day care program which, unlike the Gwinnett County schools, did not close over the holidays.

On two occasions following entry of the June 2009 order, Fifadara came to Goyal's home during his visitation with A. G. and insisted that, pursuant to her reading of the parenting plan, she was entitled to take A. G. with her. On both occasions, Gwinnett officers were called and, after reading the parenting plan, they asked Fifadara to leave. Goyal was not consulted regarding A. G.'s schooling, nor was he provided copies of school records regarding his son's progress or his medical records. On the school record listing those authorized to pick up A. G., Goyal was listed fourth, following Fifadara and two of her friends. Even though A. G. had been raised Hindu prior to the divorce, Goyal was not consulted by Fifadara when she began taking A. G. to a Christian church.

During the two years prior to the 2010 hearings, Fifadara would not answer Goyal's phone calls seeking to speak with A. G. when she had custody of him. Even when he made contact with A. G., Fifadara limited the calls to two minutes.

On March 17, 2011, the trial court entered its order modifying custody, nunc pro tunc to December 10, 2010, awarding sole legal and physical custody of A. G. to Goyal.

On April 14, 2011, with a new attorney, Fifadara filed her Motion to Reconsider Final Modification Order and Motion for New Trial. Following a hearing on July 29, 2011, the motion was denied.

1. In her first enumeration, Fifadara contends that the trial court erred "in refusing to hear all relevant evidence at the Motion for New Trial hearing," evidence which she argued was newly discovered.

In order to obtain a new trial on the ground of newly discovered evidence, Fifadara had to show that (1) the evidence came to her knowledge since trial; (2) its failure to come to light sooner was not the result of a lack of diligence on her part; (3) it was so material as to make a different verdict likely; (4) it is not merely cumulative; (5) the affidavit of the witness herself should be procured or its absence accounted for; and (6) it served some other purpose than mere impeachment. *Flowers v. Union Carbide Corp.*, 271 Ga. App. 438, 443 (3) (b) (610 SE2d 109) (2005); see OCGA § 5-5-23.

6

"The grant or denial of a new trial on the ground of newly discovered evidence is not favored and is addressed to the trial court's sound discretion." (Footnote omitted.) *Gill v. Spivey*, 264 Ga. App. 723, 724 (1) (592 SE2d 132) (2003). Accordingly, "[a] trial court's denial of a motion for new trial on the ground of new evidence will not be reversed absent an abuse of discretion." (Citation omitted.) *Flowers v. Union Carbide Corp.*, 271 Ga. App. at 443 (3) (b). See also *Medical Staffing Network v. Connors*, 313 Ga. App. 645, 647 (1) (722 SE2d 370) (2012).

No affidavits of any witnesses purporting to have newly discovered evidence were included with the motion for new trial filed by Fifadara. Nonetheless, at the hearing on the motion, the trial court allowed Fifadara's witness, Usha Bansal, to testify. She testified that she had first communicated with Goyal through an Indian matrimonial website in the early summer of 2010. She met him in person on July 9, 2010, and they were boyfriend/girlfriend until July 7, 2011. She visited Goyal in November 2010 and observed him with A. G. According to Bansal, Goyal bought the child a Lego set with which A. G. played for "10, 12, 15 hours at a time, not doing anything else." Also, Goyal kept A. G. up until 1:00 or 2:00 a.m. while Goyal talked on the phone or internet to different women. Bansal acknowledged that she had come

7

to testify and paid her own way because Goyal had promised her a good life but had hurt her instead and she wanted to teach him a lesson.

Although counsel for Fifadara stated that she had other witnesses regarding newly discovered evidence, no affidavits of these witnesses were filed as required, nor did she make any proffer of what newly discovered evidence they possessed. Failure to fulfill one of the requirements for a new trial based on newly discovered evidence is sufficient to deny a motion on that ground.[1] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

Despite Fifadara's argument to the contrary, it was not incumbent upon the trial court to make inquiry regarding the identity of these witnesses or the content of their testimony. See *Flowers*, supra.

We find that the trial court's conclusion that Bansal's testimony did not meet the criteria for the grant of a motion for new trial was not an abuse of discretion nor was its conduct of the hearing in any way improper.

2. Fifadara contends, in her second enumeration, that the trial court abused its discretion in the original trial of the case "by admitting evidence of acts that were

---

[1] Fifadara argues here that the trial court erred in limiting the hearing to 20 minutes. During the hearing, however, Fifadara did not raise any objection to this limitation and, in fact, acquiesced to the trial court's limitation.

alleged to have occurred before the most recent order concerning child custody [June 5, 2009]."

First, we note that Fifadara's trial counsel began the hearing of December 10, 2010, by requesting permission to go into evidence that occurred prior to the June 5, 2009 order concerning child custody, although he had previously filed a motion in limine seeking to restrict evidence to facts after that date. "It is a well-settled appellate rule that one cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing." *Wallace v. Swift Spinning Mills*, 236 Ga. App. 613, 617 (2) (511 SE2d 904) (1999). "[A party] cannot now complain of a result he aided in causing, because induced error is not an appropriate basis for claiming prejudice." (Citations and punctuation omitted.) *Shaver v. Kawasaki Motors Corp.*, 273 Ga. App. 140, 141-142 (614 SE2d 240) (2005).

Further, even considering the claimed errors, the first record citation to improper evidence by Fifadara is to colloquy between the trial court and Goyal's counsel regarding counsel's effort to impeach Fifadara on her filing of her June 16, 2009 Petition for Protective Order, which occurred after June 5th. The other evidence objected to by Fifadara went to the issues of contempt, not change of custody. Also,

no objection was made below by Fifadara to introduction of Plaintiff's Exhibit 17, now cited as improper evidence.

Finally, "[i]n determining the best interests of the child, the judge may consider *any relevant factor*." (Emphasis supplied.) OCGA § 19-9-3 (a) (3). *Price v. Wingo*, 306 Ga. App. 283, 284 (701 SE2d 904) (2010).

Therefore, no abuse of discretion has been shown.

3. Fifidara also contends that the trial court erred in modifying custody because it was not based on any reasonable evidence.

In its order, the trial court found that Fifadara "repeatedly interfered with Plaintiff-Father's visitation and prevented the exercise of Plaintiff-Father's parenting time under the June 5, 2009 Parenting Plan" and concluded that "the most suitable way to rectify Mother's interference with Father's visitation is by way of a change of custody and the entry of a new Parenting Plan."

As recently noted by our Supreme Court, the fact that a parent has interfered with the other parent's visitation supported the trial court's finding that it was "more likely [that the other parent] will provide visitation and abide by the Court's Orders," and its conclusion that it was in the best interest of the child to modify custody. *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). See also *Shotwell v.*

10

*Filip*, 314 Ga. App. 93, 96-97 (1) (722 SE2d 906) (2012); *Lynch v. Horton*, 302 Ga. App. 597, 601 (4) (692 SE2d 34) (2010).

Here, the trial court also noted in its oral pronouncement at the close of the evidence that Fifadara had gotten a modification in Gwinnett County basically under false pretenses and that her credibility had been completely impeached. There was also evidence that she had twice used Petitions for Temporary Protective Orders to interfere with Goyal's visitation and made a false report to police. Cf. *Lynch*, 302 Ga. App. at 602 (4) (use of forged court order to attempt to abscond with child was valid factor in modification of custody).

Considering the evidence here, "we are mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Lynch*, supra. We will not second-guess the trial court in this regard. Id.

There was no error.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*