**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 11, 2022**

# In the Court of Appeals of Georgia

A22A0750. MAXWELL v. JOHNSON.

DILLARD, Presiding Judge.

Stephanie Maxwell appeals from the trial court's grant of Bradley Johnson's petition for change of custody, the parenting plan, and the child-support addendum. Specifically, Maxwell argues the trial court abused its discretion or otherwise erred by, *inter alia*, granting Johnson's requested custody modification when he failed to establish a material change in circumstances. We agree and, for the reasons that follow, reverse.

When reviewing an order modifying a child-custody arrangement, this Court views the evidence in the record "in the light most favorable to the trial court's order

and will affirm [that] decision if there is any evidence to support it."[1] Indeed, whether particular circumstances are sufficient to warrant a change in custody is "a fact question determined under the unique situation in each individual case."[2] And here, viewing the record in the light most favorable to the trial court's judgment, it shows that Maxwell and Johnson were never married but had a son together, P. M. J., who was born in 2008 and legitimated by Johnson. A parenting plan was eventually issued in 2011.

Under the terms of the parenting plan, Maxwell and Johnson were awarded joint legal custody, and Maxwell received primary physical custody of P. M. J. Johnson received visitation for the first and third weekend of each month with the parties alternating the fifth weekend.

In 2016, Johnson petitioned for a modification to the parenting plan but was denied by the trial court, which we affirmed in an unpublished opinion.[3] And

---

[1] *Burnham v. Burnham*, 350 Ga. App. 348, 349 (829 SE2d 425) (2019) (punctuation omitted); *accord Lowry v. Winenger*, 340 Ga. App. 382, 382 (797 SE2d 230) (2017).

[2] *Harrison v. Whitaker*, 361 Ga. App. 36, 37 (1) (862 SE2d 597) (2021) (punctuation omitted); *accord Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003).

[3] *See Johnson v. Maxwell*, Case No. A16A0133 (Ga. App. Feb. 25, 2016).

although it appears undisputed that Johnson filed another petition to modify in 2018, no such filing appears in the record.[4] Then, on March 19, 2020, Johnson filed the instant petition for a change of custody.

In support of his assertion that a material change of circumstances occurred so as to warrant a change in custody, Johnson alleged that P. M. J. was (1) not receiving an appropriate amount of stability in Maxwell's home; (2) regularly subjected to Maxwell's mood swings and dangerous living conditions; (3) not living in an environment conducive to his health, education, or welfare; (4) not provided with a reasonable, safe, and stable residence; and (5) without adequate support.[5] As a result, Johnson requested primary temporary and permanent legal and physical custody be transferred to him, and that child support be adjusted accordingly.

Following a hearing on the matter, the trial court granted Johnson's petition. In doing so, the court maintained the award of joint legal custody but changed primary physical custody to Johnson and awarded Maxwell visitation on the first,

---

[4] Maxwell concedes there are no orders in the record showing a disposition.

[5] At the hearing, Johnson said he believed the material change in circumstances was that his son was going to start high school soon and there was a question about which high school he would attend. Additionally, P. M. J. was increasingly expressing a desire to live with Johnson and made comments about the presence of Maxwell's boyfriend at her home.

3

third, and fifth weekends of the month. Maxwell now appeals from the trial court's grant of Johnson's requested relief.

1. For starters, Maxwell argues the trial court abused its discretion by granting Johnson's requested custody modification when he failed to establish a material change in circumstances. We agree.

In any case in which a judgment awarding the custody of a child has been entered

> . . . that portion of the judgment effecting *visitation* rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment.[6]

But the foregoing statutory subsection does not limit or restrict the power of a judge to "enter a judgment relating to the *custody* of a child in any new proceeding based upon a showing of a change in any material conditions or circumstances of a party or

---

[6] OCGA § 19-9-3 (b) (emphasis added).

the child."[7] And because the trial court undisputedly denied Johnson's 2016 petition for modification and apparently never ruled upon a 2018 petition, the last custody award for the court to consider was the 2011 parenting plan.[8] So, in this case, the trial court was permitted to consider whether a material change in circumstances had

---

[7] *Id.* (emphasis added).

[8] *See Allen v. McGuire*, 339 Ga. App. 219, 223 (2) (793 SE2d 151) (2016) ("On a petition for modification of custody, a trial court must determine whether there has been a material change of condition affecting the welfare of the child since the last custody award. Here, the record is clear that the last custody award was the 2007 divorce decree, which awarded joint legal and physical custody of the child to both parties. There was no 'custody award' in the [2013] Fulton County custody action, as [appellee's] petition for modification of custody was denied in that case." (punctuation & citation omitted)).

occurred since 2011[9]—though its decision that no such material change of circumstances occurred *up to* 2016 had a preclusive effect.[10]

In this regard, a change of custody may be granted only if "a new and material change in circumstances affects the child."[11] So, when considering a petition for custody change, a trial court "must find that a material change in circumstances has

---

[9] *See id.* at 224 (2) ("[T]he admission of evidence concerning the circumstances that existed between the parties' 2007 decree and the denial of [appellee's] petition to modify custody in 2013 would place all of the parties' evidence into context, and it would allow the trial court to make a comparative analysis of the parties' respective evidence. Therefore, we find that all of the relevant facts and circumstances that occurred after the 2007 divorce decree should have been considered by the trial court."); *see also Elders v. Elders*, 206 Ga. 297, 300 (57 SE2d 83) (1950) ("The original decree awarding custody to the father was conclusive proof that he was entitled to continued custody, unless it appeared that new and material conditions affecting the interest and welfare of the minors had arisen since the rendition of that decree."). To the extent Maxwell suggests the trial court should not have considered evidence as to circumstances that existed between the 2011 custody order and the trial court's 2016 denial of Johnson's petition to modify, we disagree.

[10] *See Allen*, 339 Ga. App. at 221 (1) ("[W]e agree that the [prior] ruling in the Fulton County custody action has a preclusive effect on the issue of whether there had been a material change of circumstances affecting the welfare and best interest of the child, [but] the ruling in the Fulton County custody action was based on facts and circumstances that existed *at that time*.").

[11] *Harrison v. Whitaker*, 361 Ga. App. 36, 37 (1) (862 SE2d 597) (2021) (punctuation omitted); *see Stanley v. Edwards*, 363 Ga. App. 331, 336 (1) (870 SE2d 911) (2022) ("The trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award." (punctuation omitted)).

6

taken place *before* it can consider whether modification of custody is in the child's best interests."[12]

In reaching its decision, the trial court considered an in-chambers conversation with P. M. J., who was just days away from his 13th birthday. The meeting was conducted at the request of the parties and with counsel having waived their presence. Indeed, during the hearing, counsel for both parties informed the court that they consented to it speaking with the child in chambers. Following this meeting, the court indicated that P. M. J.'s desire to spend more time with his father, and his "mature reasoning" and "concerns about some aspects of life in his mother's home," were persuasive, and thus, it factored P. M. J.'s wishes into its deliberations under OCGA § 19-9-3 (a) (6).[13]

---

[12] *Harrison*, 361 Ga. App. at 37 (1) (punctuation omitted); *see Stanley*, 363 Ga. App. at 336 (1) (noting that if the trial court determines there has been a material change in circumstances affecting the child's welfare, "the trial court then determines whether the child's best interests will be served by a change in custody," or, put another way, "the best interests of the child should be utilized in deciding the case once a change in condition has been established" (punctuation omitted)).

[13] This Code section provides, *inter alia*, that "[i]n all custody cases in which the child has reached the age of 11 but not 14 years, the judge shall consider the desires and educational needs of the child in determining which parent shall have custody. The judge shall have complete discretion in making this determination, and the child's desires shall not be controlling."

The trial court also concluded that Maxwell was co-habiting with a boyfriend who—when exercising visitation with his own children—resorted to using a relative's home because of space issues in Maxwell's house.[14] As for Johnson, the court found that he was in a stable marriage with two children (with whom P. M. J. had bonded), and that Johnson lived in a neighborhood surrounded by friends. As a result, the court concluded that P. M. J.'s desire to live in Johnson's home was "in his best interests" because of the sense of security, proximity to friends and their families, and his bond with his father and half-siblings.

The trial court also found that Johnson took an active roll in P. M. J.'s education and that neither he nor his spouse had undermined Maxwell's authority under the previous child custody order—though Maxwell had "been less than malleable toward [Johnson]" and "acted petty and unreasonable toward [Johnson] regarding visitation, which had a negative impact on the child." Accordingly, the trial court found a material change in circumstances had occurred that substantially affected P. M. J.'s welfare, and the court awarded Johnson primary legal and physical custody. We will consider each of the trial court's findings in turn.

---

[14] In addition to P. M. J., an older son of Maxwell's from a previous relationship also lived in the home.

a. *The minor child's desires and concerns.* As noted by the trial court, P. M. J. was "days away" from his 13th birthday at the time of the final hearing, but the court opined that the boy was "of advanced maturity and articulation," "expressed well-reasoned and articulated thoughts as to why he should spend more time in his father's residence," and "expressed mature reasoning as to his concerns about some aspects of life in his mother's home." But the court did not detail P. M. J.'s specific concerns or thoughts before explaining that—although not bound by the child's wishes—it was "persuaded by [his] desires" and had "factored those desires along with all other evidence in [its] deliberations."

OCGA § 19-9-3 (a) (6) provides that "[i]n all custody cases in which the child has reached the age of 11 but not 14 years, the judge shall consider the desires and educational needs of the child in determining which parent shall have custody." But importantly, the judge "shall have complete discretion in making this determination, and the child's desires shall not be controlling."[15] Additionally, the parental selection of a child "who has reached the age of 11 but not 14 years shall not, in and of itself,

---

[15] OCGA § 19-9-3 (a) (6).

constitute a material change of condition or circumstance in any action seeking a modification or change in the custody of that child."[16]

Here, the trial court made clear that it was not controlled by P. M. J.'s desires but that it found his wishes persuasive. Then, after detailing Maxwell and Johnson's respective living situations, the court concluded that P. M. J.'s own desires were "in his best interests" because there was a "sense of security in [Johnson's] home, his friend-group in the neighborhood, [and] the added bonus of a built-in support structure of multiple friend's [sic] families with appropriate adult supervision." The court also considered all of these facts when assessing the child's "strong desire to have more time with his father," concluding that the desire was "well founded."

While the facts determined by the trial court could certainly support the child's desires, nothing in the record established that these facts constituted a material change in circumstances. Indeed, Johnson conceded that Maxwell had been co-habiting with the same boyfriend since his 2016 petition to modify the custody agreement, and Maxwell testified they had been together for four and a half years at the time of the final hearing. Further, there was no evidence the boyfriend's presence negatively impacted P. M. J. Instead, Johnson's testimony merely established that P. M. J. had

---

[16] *Id.*

started to "express[ ] a lot of interest about the boyfriend that comes in and out, in and out," and would comment that "[h]e's here again" when Johnson would return the child to Maxwell's house.

As to the evidence regarding the child's friend-group and the existence of an additional support system through their families, all of the testimony established that these same friends and families had relationships dating back more than six years to when Johnson and his wife first moved to their home. Accordingly, this too was not a new or material change in circumstances.

Thus, the facts the trial court referenced as supporting P. M. J.'s desires did not constitute a material change in circumstances, as it appears these situations had been ongoing for years, even prior to the trial court's 2016 determination that a material change in circumstances had not occurred.[17] Additionally, to the extent the trial court

---

[17] *See Stanley*, 363 Ga. App. at 339 (1) (b) ("Indeed, [the child] testified that the father had never helped him with reading. Based on this evidence, it appears that [the child] has always had an issue with reading, it was known to the school and the parties, and it was not the result of any conduct on the part of the mother."); *Park-Poaps v. Poaps*, 351 Ga. App. 856, 862 (2) (833 SE2d 554) (2019) ("As the mother acknowledges in her brief, parental discord that has been ongoing since before the prior custody award does not constitute a material change in circumstances."); *see also Appelbaum v. Hames*, 159 Ga. App. 552, 553 (284 SE2d 58) (1981) ("Since the boys were not brought up in the Jewish faith, appellee's failure to educate them presently in that religion is not a changed condition upon which a modification of the custody award could be based, but a preexisting condition.").

11

made a best-interests-of-the-child determination before first finding that there was a material change in circumstances, it erred in doing so.[18]

b. *The child's education.* Next, the trial court concluded that P. M. J. made good grades in his existing private school, which was supported by the record. The court further found that Johnson "takes an active roll in the child's education and engages with the child about grades when [Johnson] sees that the child's grades slip." This too was supported by the record. Nevertheless, nothing in the record showed that either fact was a *new* situation or a material change in circumstances.[19] Indeed, the record evidence was that the child spent most of his time living with his mother, and there was no evidence that he no longer enjoyed attending his school or was otherwise struggling in his current school due to being in her care.[20]

---

[18] *See supra* note 11 & accompanying text.

[19] *Cf. Lowry v. Winenger*, 340 Ga. App. 382, 384-85 (1) (797 SE2d 230) (2017) (upholding trial court's finding of a material change in circumstances based upon evidence that "the child began to exhibit apathy for school after his move to Hall County" and "although the child continued to receive good grades and had demonstrated other signs of academic progress at his school in Hall County, his apathy regarding school was a negative impact resulting from the changes").

[20] *Cf. Fox v. Korucu*, 315 Ga. App. 851, 855 (729 SE2d 16) (2012) (affirming denial of motion for summary judgment when parent "submitted an affidavit stating that [the child's] grades had 'begun to dramatically drop' and that she was unhappy and stressed about attending her current school" because this was "some evidence of

There was testimony that P. M. J. was previously diagnosed with ADHD and currently attended a private charter school where Maxwell works. He had attended the same school since third grade, and because he was a rising eighth grader and nearing the final year of education provided by that school, he would either need to matriculate to a public high school or another private school. Maxwell believed P. M. J. would do best by continuing in a private school, while Johnson believed he would be better served by attending the public school near his neighborhood. But because this change in schools had not yet occurred and was based upon speculative concerns, it too could not be considered a material change in circumstances.[21] As we have previously explained, parental disputes over which school a child should attend do

_____

a material change in circumstances that adversely affected the child"); *Lynch v. Horton*, 302 Ga. App. 597, 602 (4) (692 SE2d 34) (2010) ("[W]hile continuously residing with [the father] for more than three years, [the child] demonstrated academic excellence, maintaining an 'A' average in school. The trial court could reasonably infer that [the child] was thriving in her father's care such that granting custody to [the father] promoted her best interest toward continued stability.").

[21] *See Stanley*, 363 Ga. App. at 339 (1) (b) ("[B]eyond speculation, there was no evidence that any change in custody would improve or remedy the situation [of the child's failing grades]. Accordingly, this finding does not support the modification of custody.").

not constitute a material change of circumstances in the absence of evidence that the child's welfare has or will be impacted by a choice of schools.[22]

Thus, the trial court's findings regarding the child's grades and Johnson's involvement in his education—though supported by the record—do not support a conclusion that there was a material change in circumstances—either positive or negative—warranting a change in custody.[23]

c. *Maxwell and Johnson's attitudes toward visitation*. Lastly, the trial court found that "[Johnson], and his current spouse, . . . recognize [Maxwell's] roll under the previous order and that they did not attempt to usurp or undermine her authority."

---

[22] *See Terry v. Garibaldi*, 274 Ga. App. 405, 408 (2) (618 SE2d 6) (2005) ("A dispute over how a child will be educated is not a material change that will justify a change of custody."); *see also Bisno v. Bisno*, 238 Ga. 328, 328-29 (232 SE2d 921) (1977) (noting that "[t]he only evidence of any change affecting these minor children grows out of their removal as students from the Hebrew Academy in Atlanta and the natural desire of their father for the children to remain with him and for their excellent education at the Academy to continue," and holding that this "[fell] short of proving a material change substantially affecting the welfare of the minor children" because "[t]here is no evidence that the children cannot enjoy a comparative educational opportunity in Bibb County or that their welfare will be adversely affected by moving to Macon with their mother").

[23] *See Lynch*, 302 Ga. App. at 601 (4) ("The evidence sufficient to warrant a modification of custody can consist of a change in material conditions which have a positive effect on the child's welfare as well as changes which adversely affect the child.").

14

But the court went on to find that Maxwell "has been less than malleable toward [Johnson], and, on occasions, the [c]ourt finds that [Maxwell] has acted petty and unreasonable toward [Johnson] regarding visitation, which had a negative impact on the child."

With regard to this finding, there was evidence showing that both before and after the court's 2016 denial of Johnson's motion to modify custody, Johnson and his wife had married and welcomed new babies together but Maxwell had not given Johnson any extra time with P. M. J. on those occasions. Johnson's wife testified that Maxwell refused to allow her to pick up P. M. J. for visitation on Johnson's weekends and instead insisted that Johnson be the one to do so, even if it meant the child would be picked up for visitation much later on. Finally, Maxwell testified that Johnson recently asked for three alternative days during a two-week period in summer because he would be out of town those days, and she advised him that those days would not work for her. And according to Maxwell, Johnson then asked her to provide some dates that would work for her, to which she said, "Let's look at the calendar," but the two never discussed the topic again.

As to a lack of providing *extra* visitation days on three specific occasions, there was no showing that this was a new or material change in circumstances as there was

testimony this happened over the course of many years—two of the three instances having occurred prior to the 2016 denial of an asserted material change in circumstances.[24] And there was no assertion or testimony that Maxwell interfered with or denied Johnson his *scheduled* visitation, the repeated denial of which can, in some circumstances, be a material change sufficient to warrant a change in custody.[25] Additionally, as to the issue of who should pick up P. M. J. when it was Johnson's weekend for visitation, Maxwell testified that she insisted Johnson pick up the child because under the terms of the custody order, Johnson was the designated pickup person. And, indeed, this is what the parties' parenting plan provides.

---

[24] *See supra* note 16 & accompanying text. Notably, Johnson clearly specified in his testimony that Maxwell allowed him to have extra visitation days during hunting season, that her provision of extra visitation "varied," and that he needed to ask for extra visitation because she did not offer it on her own.

[25] *See Blue v. Hemmans*, 327 Ga. App. 353, 357 (1) (759 SE2d 72) (2014) ("It is well-established that the repeated denial of a non-custodial parent's visitation rights can constitute a material change in condition."); *Shotwell v. Filip*, 314 Ga. App. 93, 97 (1) (722 SE2d 906) (2012) (holding that interference with non-custodial parent's visitation rights supported finding of material change in circumstances); *Jones v. Kimes*, 287 Ga. App. 526, 528 (652 SE2d 171) (2007) ("While the trial court did not specifically say that the repeated denial of visitation constituted the material change in circumstances, considering the order as a whole, a strong implication arises that the court considered the visitation denials to constitute a material change. Repeated denial of the noncustodial parent's visitation rights may authorize a change of custody." (citation & punctuation omitted)).

Although there was testimony P. M. J. wanted additional time with Johnson and that their bond had recently become stronger, we reiterate that "[t]he parental selection of a child who has reached the age of 11 but not 14 years shall not, in and of itself, constitute a material change of condition or circumstance in any action seeking a modification or change in the custody of that child."[26] So, although there is no question as to P. M. J.'s desire to spend more time with his father, there was no evidence of a material change in circumstances, and the trial court erred in modifying custody between Maxwell and Johnson.

2. Because we reverse the trial court's decision on the basis that there was insufficient evidence of a material change in circumstances, to the extent they are not already otherwise discussed, we need not address Maxwell's other enumerated errors, which were that the court also erred by (2) relying upon P. M. J.'s desires; (3) relying upon statements P. M. J. made outside the presence of the parties or their counsel; (4) relying upon Maxwell's co-habitation with a boyfriend as a material change in circumstances; and (5) entering a flawed child-support worksheet.

For all these reasons, we reverse the trial court's judgment.

*Judgment reversed. Mercier and Markle, JJ., concur.*

---

[26] OCGA § 19-9-3 (a) (6).